BENJAMIN LEEMAN, PLAINTIFF, APPELLEE, v. PUBLIC SERVICE RAILWAY COMPANY, DEFENDANT, APPELLANT.

Argued November 4, 1908—Decided February 23, 1909.

1. The principle said to exist at common law that a person injured in the commission of a felony shall not pursue a civil remedy to recover damages from the wrong-doer until he shall have first instituted a criminal prosecution against the wrong-doer and obtained his conviction thereon or an acquittal, or some other termination of the proceeding on the criminal charge by some judicial act for which the plaintiff was not responsible by fault or collusion at common law applied to felonies only, and if it exists at all in New Jersey will not be extended to crimes of a lesser degree than those to which it applied at common law.

2. The above doctrine does not apply where a civil remedy is sought against one standing in the relation of master to the wrong-doer.

3. The failure to prosecute criminally could be urged merely for delaying the trial until the public duty had been performed—not for a judgment of nonsuit.

On appeal from the First District Court of the city of Jersey City.

Before Justices GARRISON, PARKER and VOORHEES.

For the plaintiff, *George F. Brensinger.*

For the defendant, *Edwards & Smith.*

The opinion of the court was delivered by

VOORHEES, J.   This is an appeal from the First District Court of Jersey City.   The suit was brought to recover dam-

ages from the railway company by the plaintiff, a passenger, whereby, as alleged in the state of demand, the defendant "did willfully and maliciously with force and arms attack the plaintiff and cast him out of and off the said car, thereby grievously wounding and battering the plaintiff." Judgment was rendered for the plaintiff.

The single question to be reviewed by this appeal is the refusal of the court to nonsuit the plaintiff because the evidence showed that the plaintiff had failed to make a complaint against the defendant or its agent, who actually committed the alleged assault, or to appear before the grand jury and secure or fail to secure an indictment against the defendant or its said agent, who actually committed the assault, before bringing this action for the recovery of damages.

This invokes the principle said to exist at common law that a person injured in the commission of a felony shall not pursue a civil remedy to recover damages from the wrong-doer until he shall have first instituted a criminal prosecution against the wrong-doer and obtained his conviction thereon or an acquittal, or some other termination of the proceeding on the criminal charge by some judicial act for which the plaintiff was not responsible by fault or collusion. *Crosby* v. *Leng,* 12 *East* 409. That this rule does not exist in the State of New Jersey in the fullness for which it is contended that it existed at common law, has been settled by the Court of Errors and Appeals in *McBlain* v. *Edgar,* 36 *Vroom* 634. In that case it was decided that the duty of a private person ceases when he has made his complaint and appeared before the grand jury and secured or failed to secure an indictment.

The question still remains, therefore, where no attempt to complain and no appearance has been made before the grand jury, what the *status* of a plaintiff in a civil case is. The origin of this rule has been stated by Judge Bigelow in *Boston and Worcester Railroad Co.* v. *Dana,* 1 *Gray* 83 :

"By the ancient common law felony was punished by the death of the criminal and the forfeiture of all his lands and goods to the crown. Inasmuch as an action at law against a person whose body could not be taken in execution, and whose

property and effects belonged to the king, would be a useless and fruitless remedy, it was held to be merged in the public offence. Besides, no such remedy in favor of the citizen could be allowed without a direct interference with the royal prerogative. Therefore a party injured by a felony could originally obtain no recompense out of the estate of a felon, nor even the restitution of his own property, except after a conviction of the offender, by a proceeding called an appeal of felony, which was long disused and wholly abolished by 59 *Geo. III., c.* 46, or under 21 *Hen. VIII., c.* 11, by which the judges were empowered to grant writs of restitution, if the felon was convicted on the evidence of the party injured, or of others by his procurement. 2 *Car. & P.* 43, *note.* But these incidents of felony, if they ever existed in this state, were discontinued at a very early period in our colonial history. Forfeiture of lands or goods on conviction of crime was rarely, if ever, exacted here, and in many cases, deemed in England to be felonies, and punishable with death, a much milder penalty was inflicted by our laws. Consequently the remedies, to which a party injured was entitled in cases of felony, were never introduced into our jurisprudence. No one has ever heard of an appeal of felony, or a writ of restitution, under *Stat.* 21 *Hen. VIII., c.* 11, in our courts. So far, therefore, as we know the origin of the rule, and the reasons on which it was founded, it would seem very clear that it was never adopted here as part of our common law."

It would seem, therefore, that this practice was confined to felonies.

The crime charged in the state of demand would not amount to a felony at common law, and hence, for the above reason, if the rule urged is the proper one, it could not apply to this case.

Felony by common law is against the life of a man, as murder, manslaughter, *felo de se, se defendendo,* &c., against a man's goods, such as larceny and robbery; against his habitation, as burglary, arson or house burning, and against public justice, as breach of prison. *Jac. Dict., tit. "Felony."*

Judge Bigelow, in the same case, has also considered the rule with reference to public policy in the following words:

"Without regard, however, to the causes which originated the doctrine, it has been urged with great force and by high authority that the rule now rests on public policy (12 *East* 413, 414) ; that the interests of society require, in order to secure the effectual prosecutions of offenders by persons injured, that they should not be permitted to redress their private wrongs until public justice has been first satisfied by the conviction of felons; that in this way a strong incentive is furnished to the individual to discharge a public duty by bringing his private interest in aid of its performance, which would be wholly lost if he were allowed to pursue his remedy before the prosecution and termination of a criminal proceeding. This argument is doubtless entitled to great weight in England, where the mode of prosecuting criminal offences is very different from that adopted with us. It is there the especial duty of everyone, against whose person or property a crime has been committed, to trace out the offender and prosecute him to conviction. In the discharge of this duty he is often compelled to employ counsel, procure an indictment to be drawn and laid before the grand jury, with the evidence in its support, and if a bill is found, to see that the case on the part of the prosecution is properly conducted before the jury of trial. All this is to be done by the prosecutor at his own cost, unless the court, after the trial, shall deem reimbursement reasonable. 1 *Chit. Crim. L.* 9, 825. The whole system of the administration of criminal justice in England is thus made to depend very much upon the vigilance and efforts of private individuals. There is no public officer appointed by law in each county, as in this commonwealth, to act in behalf of the government in such cases, and take charge of the prosecution, trial and conviction of offenders against the laws. It is quite obvious that, to render such a system efficacious, it is essential to use means to secure the aid and co-operation of those injured by the commission of crimes, which are not requisite with us. It is to this cause that the rule in question, as well as many other legal enactments de-

signed to enforce upon individuals the duty of prosecuting offences, owes its existence in England. But it is hardly possible under our laws that any grave offence of the class designated as felonies can escape detection and punishment. The officers of the law, whose province it is to prosecute criminals, require no assistance from persons injured, other than that which a sense of duty, unaided by private interest, would naturally prompt.

"On the other hand, in the absence of any reasons founded on public policy, requiring the recognition of the rule, the expediency of its adoption may well be doubted. If a party is compelled to await the determination of a criminal prosecution before he is permitted to seek his private redress, he certainly has a strong motive to stifle the prosecution and compound with the felon. Nor can it contribute to the purity of the administration of justice, or tend to promote private morality, to suffer a party to set up and maintain in a court of law a defence founded solely upon his own criminal act. The right of every citizen under our constitution to obtain justice promptly and without delay requires that no one should be delayed in obtaining a remedy for a private injury, except in a case of the plainest public necessity. There being no such necessity calling for the adoption of the rule under consideration, we are of opinion that it ought not to be engrafted into our jurisprudence."

This case was unqualifiedly approved by the Court of Errors and Appeals in *McBlain* v. *Edgar, supra.* The rule as it existed at common law having been confined to what were then felonies and the rule having been narrowed, if indeed it existed at all in New Jersey, will not be extended to crimes of a lesser degree than those to which it applied at common law.

But this practice cannot apply where a civil remedy is sought against one standing in the relation of master to the wrong-doer. The duty which, at common law, rested on the person injured, was to prosecute the felon. None of the reasons given for its existence in cases where the criminal is the defendant can be logically urged where the defendant's liability must be enforced under the doctrine of *respondeat superior.*

Where the act of the servant is the criminal matter and that of the master is not, why arrest an action against the master founded upon the doctrine of agency because an indictment might be found against the servant? The authorities do not support the appellant's contention. They are collected in 1 *Cyc.* 684.

As a matter of fact this doctrine can have no application to our system of government and in practice does not exist here, nor, as we have above seen, is there necessity for it on the ground of public policy.

But, finally, the defendant's motion to nonsuit was too broad. The failure to prosecute criminally could be urged merely for delaying the trial until the public duty had been fulfilled, not for a judgment of nonsuit.

The judgment will be affirmed.