13 N.J. Super. 395 (1951)
80 A.2d 476
IRENE HORBY, PLAINTIFF,
v.
JACK WESLEY KING, DEFENDANT.
Superior Court of New Jersey, Law Division.
Decided April 25, 1951.
*399 Messrs. Hodes & Hodes (Mr. Irving Hodes appearing), attorneys for plaintiff.
Mr. Thomas J. Markey, attorney for defendant.
HARTSHORNE, J.C.C. (temporarily assigned).
This cause arises on motion to dismiss the above action, upon affidavits and transcript of proceedings at the previous trial at which a mistrial was declared.
The complaint is in two counts, the first for an assault and battery upon plaintiff by defendant, the alleged facts amounting to criminal rape. The second count, as stated in the pretrial, is based on the allegation that "The defendant has refused to perform his agreement" to compensate the plaintiff woman for the "expenses connected with the birth of the child" resulting from such intercourse, and to contribute to the support of the child." The bases of the motion differ as to each count.
The motion as to the first count is based upon the claim that the plaintiff woman had no right to sue the man who raped her for damages, until after she had instituted criminal proceedings against the man for such rape. In support of this somewhat esoteric doctrine, counsel cites McBlain v. Edgar, 65 N.J.L. 634 (E. & A. 1901); Leeman v. Public Service, *400 77 N.J.L. 420 (Sup. Ct. 1909); Vineland v. Maretti, 93 N.J. Eq. 513 (Ch. 1922). These decisions, in alluding to the above rule as previously in effect in England, point out that it is an anachronism in present-day New Jersey, being "founded upon a reason which does not exist with us, and, therefore, should not be followed," and alluding to the fact that it has either been "repudiated" or "abolished * * * by statute," in most of the states where the question has arisen. McBlain v. Edgar, supra, p. 636; 1 C.J.S., Actions, sec. 11, page 994. Indeed, in the Leeman case, after rediscussing the matter, the court says: "as a matter of fact, this doctrine can have no application to our system of government and in practice it does not exist here, nor, as we have above seen, is there necessity for it on the ground of public policy."
However, after these strong animadversions against the policy of this ancient English rule, enacted at a time when, and because, the goods of the felon were forfeited to the Crown, so that an action for damages against him would be useless, these decisions apparently do indicate the rule to have been in effect here some half-century ago, at least to a limited extent. Since this court is, of course, bound to follow the decisions of the appellate courts, regardless of its own viewpoint, we turn to the ascertainment, and applicability to the cause at bar, of the limited rule, as applied in the above cases.
The McBlain case, like the case at bar, was founded upon allegations which would have constituted criminal rape. The court held, not as in the English rule, that the civil cause could not be instituted before the criminal proceedings were instituted, but "that the party may institute the proceedings for damages as promptly as he chooses, only he must not bring on the trial in advance of his public duty," approving the language of Bishop on Criminal Law. Further, the court stated: "The duty of a private person in this state ceases when he has made his complaint and appeared before the grand jury and secured, or failed to secure, an indictment." In the Leeman case, the court concluded: "The failure *401 to prosecute criminally could be urged merely for delaying the trial until the public duty had been fulfilled, not for a judgment of nonsuit." Since, in the Leeman case, the court discussed for the first time the point that this anachronistic doctrine at all events applied only to common law felonies, plaintiff in the case at bar claims that rape was not a common-law felony. But, as to this, the serious character of the crime of rape is self-evident, and rape was made a felony in England as far back as the time of Edward the Confessor, literally centuries before New Jersey inherited its common law from the mother country. 52 C.J., Rape, sec. 6 (d), p. 1007.
It is a fact that no criminal proceedings as to this rape were instituted by plaintiff woman, or the authorities, prior to the institution of the present suit. In fact, nothing whatever was heard of this alleged bar to the suit in the pleadings, at the pretrial, or at the original trial, until after plaintiff's opening, whereupon, for that and other reasons, a mistrial ensued. Promptly thereafter the plaintiff woman applied to the authorities to take a criminal complaint for rape against defendant. But, by that time, two years had elapsed from the time of the alleged rape, and the criminal court, therefore, refused to take the complaint. The defendant claims, that since the plaintiff woman failed to initiate these criminal proceedings till after they were barred by the statute, she is now estopped to allege her belated attempt to initiate same, as a compliance with her "public duty," which under the above rule must precede the trial of the civil suit.
But what are the facts in regard to this claim of estoppel? Surely if defendant to avoid surprise must, under the rules, specifically allege in his answer the bar of the statute of limitations, or the nonperformance of conditions precedent generally, he should have set up this little known bar, arising from the nonperformance of an alleged condition precedent, to bringing suit. Rule 3:8-3; 3:9-2. But this defendant failed to do. Had he done so, plaintiff would doubtless have done her public duty the minute she was aware of such claim. This is proven by her prompt action to that effect *402 the minute she was advised of such claim by defendant's belated motion at the original trial, as above. Since defendant's answer was filed almost a year before the right expired to proceed criminally, the criminal complaint would have been timely had defendant done as he should in his answer. Nor did defendant notice the present motion raising this unusual question till long after the usual time therefor. Rule 3:12-2. Had he done so, again the criminal complaint would have been timely. Nor did defendant set up this alleged defense at pretrial, the very time the rules require the express statement of the "factual and the legal issues to be litigated." Rule 3:16. Since even the pretrial occurred before the criminal bar had run, the criminal complaint again would have been timely had defendant done what the rule required.
Finally, at the request of defense counsel, the original trial was twice postponed till after the bar to the criminal proceedings had run. Had defense counsel not so requested, his belated notice to plaintiff of this alleged bar would even then have given her sufficient time to initiate the criminal proceedings before they were barred.
Thus, whether intentionally or not, defendant lulled plaintiff into a false sense of repose, until her attempt to take criminal proceedings could not be successful. Furthermore, it is well settled that the doctrine of estoppel applies to prevent a party from repudiating a "position assumed where that course would work injustice to another who, having the right to do so, has relied thereon * * *. While the creature of equity and governed by equitable principles it (the doctrine of estoppel in pais) is a doctrine enforceable in courts of common law jurisdiction." N.J. Suburban Water Co. v. Harrison, 122 N.J.L. 189, 194 (E. & A. 1939). Here, defendant assumed the position for many months, contrary to his duty under the court rules, that his defense did not include the present alleged bar. That plaintiff relied on this attitude of defendant is obvious from the fact that the minute the existence of the bar was suggested, she promptly did all she could be expected to do in order to meet it. Thus, it would *403 seem that the doctrine of estoppel in pais would apply not to plaintiff but to defendant, and that plaintiff having sought to institute criminal proceedings prior to the pending trial of the civil action, defendant is estopped from complaining that plaintiff's efforts were unsuccessful.
Further, it would seem that by defendant's repeated failure (1) to plead this alleged bar in his answer; (2) to move thereon in due course; and (3) to state same at pretrial, all as required by the above rules, defendant is now barred from relying thereon even on the present motion. This would seem the purport of the rule as to waiver of defenses. Rule 3:12-8. The proviso in such rule as to defendant's right to move on the trial to dismiss for "failure to state a claim upon which relief can be granted" should be limited to matters appearing on the face of the record. To permit it to apply to matters dehors the record would cause the very surprise that pleadings and pretrial are aimed to prevent.
Thus, plaintiff is not barred by the rule alluded to in the above cases, even if same still is, or ever was, the law in New Jersey.
Defendant's motions to strike the second count are based on several grounds. First, that since the allegations of the first count are incorporated in the second count, its above objection to the first count equally applies to the second. Second, that plaintiff's statutory right to obtain support for the child has wiped out its common-law right to sue on the agreement. Third, that such suit is a suit for breach of contract to marry, invalidated by statute. R.S. 2:39A-1.
As to the first of such objections, not only is same invalid for the reasons above stated, but defendant's contractual duty to support, as alleged, exists quite independent of whether the conception of the child was by consent, or vi et armis. In other words, as to the second count, the allegations of the first count are pure surplusage.
As to the second objection, the statutory remedies given primarily to the authorities, and, in lieu thereof, to the mother, to obtain support from the father, are all based *404 upon the duty of the father to the public  to prevent his child from becoming a public charge. This duty exists even if the father had made no such agreement as is alleged as the basis of count two. This contract creates a duty additional to the statutory one. Not only do these statutes not indicate that they wipe out the common-law right to sue on the contract, or that they are the exclusive remedy, but the case of Lasasso v. Lasasso, 1 N.J. 324 (1949) shows that they are not the exclusive remedy. Since the language of Kopak v. Polzer, 4 N.J. 327 (1950), and Tuohy v. Boynton, 5 N.J. Super. 265 (App. Div. 1949), on which defendant relies, all refer solely to these statutory proceedings, and not to the pre-existing common-law and equitable remedies, they are not to be read as wiping out such pre-existing remedies. Such statutes thus do not wipe out the ordinary common-law jurisdiction, relied on here.
As to the third objection, that the second count is one for breach of contract to marry, contrary to R.S. 2:39A-1, this is equally groundless. As the pretrial says, the essence of such count is that "defendant with knowledge of the plaintiff's pregnancy, entered into an agreement with the plaintiff that if the plaintiff would not institute any bastardy proceedings against (him) on account of the child born of the assault, the defendant would compensate her for the hospital expenses and medical expenses connected with the birth of the child, and would contribute to the support of the child; that the defendant has refused to perform this agreement." The count contains none of the usual allegations pertinent to a breach of contract to marry; its terse allusion to the fact that "defendant assured plaintiff that he would marry her" not being set up as a part of the contract sued on, and thus being mere surplusage. Nor does it ask damages to the woman pertinent to that kind of action. It is, therefore, not in violation of the policy of the above statute. Blackman v. Iles, 4 N.J. 82 (1950).
Defendant's motion is, therefore, denied, and the pending trial may proceed.