Woohyung SHIM, Korea House Trading Corp., Korea House Inc., Ho Sam Trading Co., Inc., Orion Oriental Food, Ltd., Plaintiffs,

v.

KIKKOMAN INTERNATIONAL CORP., and Nomura and Company, Defendants.

Civ. No. 79–1071.

United States District Court, D. New Jersey.

Jan. 15, 1981.

Roland A. Dexter, Westfield, N. J., for plaintiffs.

Donald J. Williamson, P. A. by Michael F. Rehill, Newark, N. J., for defendant Kikkoman.

Crummy, Del Deo, Dolan & Purcell by Arnold B. Calmann, Newark, N. J., for defendant Nomura.

## OPINION

BIUNNO, District Judge.

The complaint in this case was filed April 17, 1979 setting out six counts alleging violations of the anti-trust laws (secs. 1 and 2 of the Sherman Act, sec. 2 of the Clayton Act ·as amended by the Robinson-Patman Act and sec. 3 of the Robinson-Patman Act).

The relief sought is a declaration of unlawfulness of certain alleged trade practices for the sale of oriental foodstuffs, treble damages, costs and attorneys fees.

Return was filed showing service of summons and complaint on defendant Kikkoman on April 24, 1979. Within the 35 days to answer or otherwise move, Kikkoman served and filed notice of demand for posting security for costs by each nonresident plaintiff under General Rule 35D(1) of this District.[1]

Return on an alias summons directed to defendant Nomura showed service on July 9, 1979. Within 35 days of service, Nomura served and filed a like notice of demand to post security for costs under the same rule. This was filed July 23, 1979.

Thereafter, there was no activity whatever in the case, until December 5, 1980, which is 501 days or nearly 16.5 months later, when the clerk filed and issued a Notice of Call for Dismissal for failure to prosecute, under General Rule 30 of this District,[2] returnable January 12, 1981.

On December 18, 1980, about two weeks later, the sum of $300 was deposited in the Registry of the court as security for costs, and on the same day plaintiffs' attorney served and filed notice thereof dated December 15, 1980.

On December 22, 1980 plaintiffs filed three affidavits. The first is by Seokjun Han, president of Ho Sam Trading Co., Inc.

a/k/a Jin Han II, said to be a plaintiff not only in the present suit but also in two other actions in this court, Civ. 78–574 and 78–1049.[3] Mr. Han says he has been called to testify before a federal grand jury in the District of Maryland in connection with business dealings with Kikkoman, and produced records requested by lawyers from the anti-trust division of the Department of Justice. He says he and the other plaintiffs feel the present suit should be delayed to enable him to make available all his records in order not to hinder the investigation of the Department of Justice. He· also says that in the earlier two actions, he was left with nothing but frustration while Japan Food Corporation (not a party in this suit) obtained more than 20,000 documents and had at least 6 days of depositions, by way of discovery in those other suits.

The second affidavit is by John S. Choi, president of Korea House Trading Co. He also recites giving testimony during May, 1980, and providing documents, for the same grand jury in connection with rice transactions with Japan Food Corporation (now known as JFC International), with Pacific International Rice Milling of Woodlands, California (neither of which is a party to this suit) and with defendant Nomura.

1. The text of General Rule 35D is as follows:
"D. Security for costs by Non-Resident.
"(1) If plaintiff, or one of the plaintiffs in any civil action is a non-resident of this district, he or it shall, if required by notice given to him or it by a defendant, give bond with corporate surety to such defendant in the sum of $100 to be filed with the clerk, or deposit with the clerk the said sum in cash, conditioned to prosecute his or its action with effect, and to pay· costs if his or its action is dismissed or judgment passes against him or it.
"(2) If such defendant is entitled to security for costs, upon giving the notice aforesaid, all proceedings shall be stayed until such security is given or deposit made. Upon filing security or making such deposit, plaintiff shall, in writing, notify such defendant thereof, and such defendant shall then have the same time to plead or make other motions as such defendant had at the time of service upon plaintiff of the notice requiring security. Both of the notices aforesaid after service shall be promptly filed with the clerk of the court.

"(3) Additional or other security may, in the discretion of the court be ordered at any time during the pendency of the action.
"(4) Where there are multiple plaintiffs or defendants in one civil action and some of the plaintiffs are non-resident the court on motion may order such security filed by such non-resident plaintiffs as it in its discretion may direct."

2. The pertinent part of the text of General Rule 30 is as follows:
"RULE 30 DISMISSAL OF INACTIVE CASES
A. Civil cases, other than bankruptcy matters, which have been pending in this court for more than six months without any proceedings having been taken therein, may be dismissed as of course for want of prosecution by the court on its motion, or notice by the clerk to all parties who have appeared."

3. Civ. No. 78–574, assigned to Judge Meanor, is a pending case at this date. Civ. No. 78–1049 has been dismissed by Judge Meanor.

He too says he has instructed plaintiffs' attorney to cooperate fully with the lawyers for the Department of Justice, that many records of his company have been provided as a result, and that he understands the grand jury should be completed in the near future. No indication is given whether the grand jury proceedings are in any way connected with the rice transactions involved in the so-called "Koreagate" investigation involving some members of the Congress, and which appears to have been closed at the congressional level.

The third affidavit is by plaintiffs' attorney, Mr. Dexter. He explains that soon after filing this complaint he was contacted by a lawyer of the anti-trust division of the Department of Justice who was starting an informal investigation of business practices of Japan Food Corporation, and promised to provide full cooperation. Within a few months, he was told that the matter was now a formal investigation, and so reported to Judge H. Curtis Meanor of this District, to which Civ. 78–545 had been assigned.

He says that the demand to provide security for costs gave him the opportunity, by failing to make the deposit, to avoid discovery demands in this case while facilitating cooperation with the Department of Justice. This strategy is also described as providing a means to isolate plaintiffs from further testimony before appearing at the grand jury proceedings. In his own words:

> "All that was necessary was for plaintiffs not to post security and so no security was posted."

Both defendants point out that under General Rule 35D(1), each non-resident plaintiff is required to post a surety bond or cash for $100., conditioned on prosecuting the action with effect, and until the security is posted, the action is stayed. Since there are 5 non-resident plaintiffs, and two defendants who have served notice of demand, the required security is $1,000., not the $300. provided, absent a specific order otherwise under General Rule 35D(3) or (4). See the text of the entire rule in footnote 1, supra.

On this aspect of the case, then, it is clear from plaintiffs' own papers in response to the Clerk's notice of call for dismissal, that the failure to post security was deliberate and for the specific purpose of avoiding any prosecution of the action with effect. The affidavits thus fail to meet the motion, which is granted for failure to take any steps in the cause for more than 6 months. See the text of the rule at footnote 2, supra.

It remains to be considered whether the alleged desire to cooperate with the grand jury proceedings in Baltimore, or the pendency thereof, provide a basis for excusing the admitted failure to prosecute.

Although the subject seems not to be referred to in modern decisions, it appears to have been the common law of England that where conduct amounted to a felony, and also gave rise to a civil action, the civil suit could not be maintained until the injured party had prosecuted the criminal charge to completion by either conviction or acquittal. A seminal case which considered that rule and decided that it did not apply in the United States was *McBlain v. Edgar*, 65 N.J.L. 634, 48 A. 600 (E & A, 1901). In that unanimous decision, Mr. Justice Fort observed that the rationale for the English practice did not exist here. He pointed out that when the practice prevailed in England, it was the obligation of the victim to prosecute the criminal charge, even to the point of engaging counsel, procuring the indictment to be drawn and laid before the grand jury with evidence in support, and if the indictment were found to see that it was properly prosecuted before a trial jury.

The precedents cited by Mr. Justice Fort are 1 Chitty on Criminal Law, 9, 825; and *Crosby v. Leng*, 12 East. 409. The duty to vindicate the public interest was thus made a condition to the prosecution of private civil claims lest the public interest be disadvantaged.

The control of criminal prosecutions in this country has long been placed solely in the hands of public prosecutors. The notion that the victim have the duty not only to report the offense to enforcement officials but also to prosecute the criminal charge is

unknown here. Thus, the reason for the English practice does not exist.

The *McBlain* case refers to a note to the case of *Foster v. Fuchs,* reported at 14 Am.Dec. 243, as reviewing the states which had then abolished the rule by statute or by court decision. Judge Bigelow's opinion in *Boston etc. Railroad Co. v. Dana,* 67 Mass. 83 (Sup.J.Ct.1854), is also referred to as containing an exhaustive review of the whole subject and rejecting the English practice. That view was adopted in *Atwood v. Fisk,* 101 Mass. 363, at 365 (Sup. Jud.Ct.1867), as well as by the *McBlain* court.

A later case, *Leeman v. Public Service Ry. Co.,* 77 N.J.L. 420, 72 A. 8 (Sup.1909) sets out a fuller discussion of Judge Bigelow's decision. Other "lost" authorities are 1 Bishőp on Criminal Law, §§ 267, 272, and 1 Corpus Juris "Actions", §§ 49 and 50, pp. 954–957 (1914) and the numerous precedents cited. The most recent decision found in New Jersey is *Horby v. King,* 13 N.J.Super. 395, 80 A.2d 476 (Law, 1951).

From these materials, it is evident that what is left of the rule in this country is a requirement that the victim report what he knows of the alleged criminal offense to the proper law enforcement authorities. Once that is done, the duty to prosecute the criminal aspect attaches to the law enforcement officials, with all the ramifications involved including questions whether proofs can be made beyond a reasonable doubt and other considerations coming within the scope of prosecutorial discretion.

■ The public duty of the private citizen having thus been discharged to the extent he can have any control, he is then free to proceed with his civil claim with diligence.[4]

■ No doubt there will be individual cases where the advancement of the civil suit may be hampered by the pendency of the criminal charge. Since the advent of modern discovery mechanisms, there may well be witnesses who raise their Fifth Amendment right against self-incrimination, thus tending to limit discovery. In some instances other discovery proceeds. In others, the trial court may decide that the entire case should be stayed because of such obstacles. In any case, the decision is reached on a case-by-case basis, taking into account and weighing the totality of the circumstances of the particular case. There is no general rule.

■ Stays and postponements on such account are to be avoided if at all possible if only because of the importance that discovery and trial testimony be as fresh and close to the event as possible, and to avoid the loss of evidence through fading memories and the death of individuals. The object of diligent prosecution of civil suits requires close administrative attention and control also for the reason that limited judicial resources and available time are heavily pre-empted by the demands of the criminal calendar, particularly in the federal courts since the enactment of the Speedy Trial Act of 1974.

■ In sum, the pendency of grand jury matters elsewhere that might have some relation to this suit provides no excuse for *plaintiffs'* delay and failure to prosecute. If it be the case that one or the other of the defendants here be a target of that investigation, it would be for them to object to prosecution. Since both are business entities, corporate or otherwise, they do not have any Fifth Amendment right against self-incrimination.

4. Of course, public policy considerations continue to have force in connection with the civil suit. For example, the civil claim cannot lawfully be settled on terms involving "dismissal" of the related criminal charges. The prosecutor and judge in the criminal case must be given full and open disclosure of all the terms of the settlement; otherwise agreements not to testify or provide evidence (and the like) as part of the settlement may amount to compounding the offense. See, for example, *In re Friedland,* 59 N.J. 209, 280 A.2d 183 (1971); *Wilson v. United States Lines,* 114 N.J.Super. 175, 275 A.2d 457 (Law, 1971). The *Wilson* case displays some collateral dangers from failure to make full disclosure and leaving it to the prosecutor and judge to decide whether the criminal charge should be pressed or dropped.

Both because, even now, plaintiffs have failed to post the required $1,000. security, deliberately and for the purpose of delay, and because the existence of the grand jury proceedings provide no excuse for plaintiffs' diligent prosecution of this civil suit, the clerk's notice of call is granted.