TITUS, Thomas E., Appellant,

v.

**MERCEDES BENZ OF NORTH AMERICA.**

No. 82–5009.

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit Rule 12(6) June 24, 1982.

Decided Dec. 13, 1982.

As Amended Dec. 17, 1982.

Hilton Davis, Newark, N.J., for appellant.

Allan G. Freund, William C. Spencer, Montvale, N.J., for appellee.

Before GARTH and BECKER, Circuit Judges, and FULLAM, District Judge.[*]

## OPINION ANNOUNCING THE JUDGMENT OF THE COURT

BECKER, Circuit Judge.

This appeal requires us to consider whether the district court abused its discre-

---

[*] Honorable John P. Fullam, United States District Judge for the Eastern District of Pennsylvania, sitting by designation.

tion in dismissing appellant's complaint with prejudice upon recommendation of the United States Magistrate, who reported that plaintiff's counsel had been unprepared at several pretrial conferences and had failed timely to submit a pretrial order. At the time of the dismissal, this court had not decided *Donnelly v. Johns-Manville Sales Corporation,* 677 F.2d 339 (3d Cir.1982), which holds that, prior to dismissing an action with prejudice for failure to prosecute, the district court must first consider whether less severe sanctions would serve the ends of justice. Not having the benefit of *Donnelly,* the district court dismissed without considering the availability of such sanctions; at least the record does not reflect that consideration. Since *Donnelly* now represents the law of this circuit and must be applied in all cases subsequent to its filing,[1] we vacate and remand for further consideration in light of *Donnelly.*

I.

After receiving a "right to sue" letter from the Equal Employment Opportunity Commission (EEOC), the appellant, Thomas F. Titus, instituted an action in the district court on January 26, 1981. Claiming violations of Title VII of the Civil Rights Act of 1964, as amended, the complaint alleged that Titus had been discharged from his employment with appellee, Mercedes Benz of North America, on November 16, 1979, as the result of racial discrimination.[2] Mercedes Benz filed its answer on March 10, 1981, whereupon the case was referred to a United States Magistrate for pretrial proceedings. On March 11, 1981, the clerk mailed a pretrial notice form to counsel.[3] The rest of the record is sparse—its paucity illustrated by the fact that the next entry on the docket, except for the filing of a deposition transcript, is the magistrate's

---

1. Although the dismissal below occurred before *Donnelly* was decided, the factors enunciated by the Supreme Court suggest that *Donnelly's* holding should be applied to the facts of this case.

 In our cases dealing with the nonretroactivity question, we have generally considered three separate factors. First, the decision to be applied nonretroactively must establish a new principle of law, either by overruling clear past precedent on which litigants may have relied, ... or by deciding an issue of first impression whose resolution was not clearly foreshadowed.... Second, it has been stressed that 'we must ... weigh the merits and demerits in each case by looking to the prior history of the rule in question, its purpose and effect, and whether retrospective operation will further or retard its operation.' ... Finally, we have weighed the inequity imposed by retroactive application....

 *Chevron Oil Co. v. Huson,* 404 U.S. 97, 106–07, 92 S.Ct. 349, 355–56, 30 L.Ed.2d 296 (1971) (citations omitted); *cf. Hamling v. United States,* 418 U.S. 87, 94 S.Ct. 2887, 41 L.Ed.2d 590 (1974) (court's modification of obscenity standards announced in *Miller v. California,* 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973), was applicable in reviewing a conviction under obscenity laws even though *Miller* was decided after appellant had been convicted); *Bradley v. School Bd. of Richmond,* 416 U.S. 696, 94 S.Ct. 2006, 40 L.Ed.2d 476 (1974) (appellate courts are to apply the law in effect when decision is rendered unless "manifest injustice" to a party would result, or the statute or legislative history indicates otherwise).

2. The only background information to be gleaned from the record regarding the nature of appellant's underlying claims comes from the transcripts of the depositions of appellant and a supervisory employee of appellee. It appears that the appellant was hired by appellee on January 31, 1966, as a warehouseman at its Teaneck, New Jersey facility; that he was promoted through the ranks to shipping clerk, warehouse supervisor, and assistant depot manager; that he held the joint job classification of warehouse supervisor and assistant depot manager when, in 1978 or early 1979, he was demoted to warehouse supervisor; and that apparently as the result of poor performance ratings he was summarily discharged from the company's employ on November 16, 1979.

3. The pretrial notice form sets forth the procedures required for preparation of the formal pretrial order, which is in turn to be reviewed and entered at the pretrial conference. The form calls upon counsel for all parties to confer in person prior to the pretrial conference in order to arrive at stipulations, to exchange documents that will be offered as evidence, and to consider a variety of other matters. The notice places the onus upon plaintiff's counsel to initiate the conference as well as to prepare a pretrial order and submit it to opposing counsel. All counsel must jointly submit the original and one copy of the final draft of the proposed pretrial order to the court at least one full workday prior to the conference.

November 6, 1981, report and recommendation of dismissal.[4] That report and recommendation, filed *sua sponte,* is sufficiently brief that we set it forth in full:

This is a Title VII case for alleged racial discrimination in employment. A pretrial notice fixing a pretrial conference for June 8, 1981 was sent to counsel for the parties by the clerk of this court on March 11, 1981. On June 8, 1981, counsel appeared and plaintiff was unprepared and was without a pretrial order prepared pursuant to the pretrial notice. A pretrial conference was scheduled for September 10, 1981 and on that date counsel again appeared and the plaintiff was again unprepared. It was necessary to enter a discovery order fixing dates for the completion of discovery and a final pretrial conference was set for October 15, 1981. Counsel were directed that it was necessary that a pretrial order in accordance with this court's pretrial notice be presented for signature on that date. On October 15, 1981, counsel again appeared and again, plaintiff was unprepared and no pretrial order was presented. Counsel for plaintiff was directed to present a pretrial order prepared pursuant to the directions contained in the original pretrial notice no later than Oc-

tober 22, 1981. This date was selected by plaintiff's attorney.

To date, plaintiff has failed to comply with this court's order and has failed to prosecute this case. It is respectfully recommended that the matter be dismissed.

Both parties submitted letters to the district court in response to the report and recommendation. In his letter, Titus' attorney challenged the report's veracity. He stated:

In her report, [the magistrate] indicated, inter alia, that no Pre-trial order was presented. It should be noted that my staff has presented a Pre-trial Order, admittedly it was late, and same, as I understand it, would not be accepted unless it was also concurred to by my adversary. On said date, we delivered a copy to my adversary.

Subsequently thereto, telephone calls and communications were forthcoming. This week I received [a] letter from my adversary outlining their objections; all of which can be cured.

Appellee's letter, in contrast, was accompanied by an affidavit of counsel in which he stated that, to his knowledge, Titus had never submitted a pre-trial order to the magistrate and that, in addition to not having been prepared on October 22, Titus' counsel did not even appear for the pre-trial

4. The record contains only the complaint, return of service, the answer, the deposition transcripts referred to *supra* note 2, the report and recommendation of the magistrate, the order approving that report, and some miscellaneous papers such as assignment sheets.

Appellee has filed an appendix in this court supplementing the district court record with (1) the submissions made by the parties to the district court in response to the magistrate's report; and (2) the pretrial notice form, *see supra* note 3, which governs the district court's pretrial procedures. Appellant has contributed virtually nothing to complete the record. Except for a copy of the magistrate's report, he filed no appendix and devoted the bulk of his brief to a recitation of facts which are not contained in the record and which we may not consider, *see Farnese v. Bagnasco,* 687 F.2d 761 (3d Cir., 1982) ("In determining whether the district court has abused its discretion, a court of appeals must limit its review to matters of record.").

Much of this extra-record material is also contained in a document styled "Plaintiff-Appellant's Statement of Proceedings (In Lieu of Record on Appeal)" which was filed in this court but is not in conformity with Fed.R. App.P. 10(d). Appellee's appendix contains "Objections and Proposed Amendments" to that document and includes a chronology of events. These documents contain information that, particularly in view of the conclusory nature of the magistrate's report, would add considerable flesh to the skeletal record of the proceedings below. Even though many of the matters related were presumably within the magistrate's ken, we are not at liberty to consider them because we cannot be sure that they were before the district judge and informed his exercise of discretion. Because this extra-record material is not a factor in our judgment, we are at a loss to understand Judge Garth's statement to the contrary, *see infra* at 750, n. 7.

conference.[5] The affidavit further informed the district court that Titus had not responded to Requests for Admissions and Interrogatories except to supply the names of potential witnesses. Titus did not challenge the affidavit and concedes in his brief to this court that his counsel failed to appear at the October 22 conference.

On November 30, without hearing argument, the district court entered a brief order approving the magistrate's report and dismissing the case with prejudice less than eight months after it had been filed. Titus contends that the district court's action was an abuse of its discretion because (1) the "harsh sanction" of dismissal should be resorted to only in extreme cases, and only when there is a clear showing of willful violation of court rules or orders or of contumacious conduct or intentional delay; and (2) none of those factors are present on this record.

## II.

 It is well established that a court has authority to order a dismissal *sua sponte* when the plaintiff has failed to prosecute his suit. In *Link v. Wabash Railroad Co.,* 370 U.S. 626, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962), Justice Harlan wrote:

> The power to invoke this sanction is necessary in order to prevent undue delays in the disposition of pending cases and to avoid congestion in the calendars of the District Courts. The power is of ancient origin, having its roots in judgments of *non suit* and *non prosequitur* entered at common law. . . . the authority of the court to dismiss *sua sponte* for lack of prosecution has generally been considered an "inherent power," governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.

*Id.* at 629–31, 82 S.Ct. at 1388–89 (citations and footnote omitted).

This Court has recently emphasized, however, that district courts should be reluctant to deprive a plaintiff of the right to have his claim adjudicated on the merits. *See, e.g., Donnelly v. Johns-Manville Sales Corporation,* 677 F.2d 339 (3d Cir.1982); *Harris v. Cuyler,* 664 F.2d 388 (3d Cir.1981). *Donnelly,* our most recent pronouncement in this area, restated the governing principle in this Circuit: dismissal is a drastic sanction and should be reserved for those cases where there is "a clear record of delay or contumacious conduct by the plaintiff." 677 F.2d at 342. *Donnelly* further held that "it is necessary for the district court to consider whether lesser sanctions would better serve the interests of justice." [6] *Id.; accord Asociacion de Empleados del Institu-*

---

**5.** As noted *supra* note 4, these communications, which presumably informed the district court's exercise of discretion, were supplied to us via the parties' "appendices."

**6.** Such possible sanctions, as the First Circuit has suggested, include a warning, a formal reprimand, placing the case at the bottom of the calendar, a fine, the imposition of costs or attorney fees, the temporary suspension of the culpable counsel from practice before the court, and dismissal of the suit unless new counsel is secured. *Zavala Santiago v. Gonzalez Rivera,* 553 F.2d 710, 712 n. 1 (1st Cir.1977). We add that district courts may also consider as sanctions the preclusion of claims or defenses, or the imposition of fees and costs upon plaintiff's counsel under 28 U.S.C. § 1927 (1980).

In dissent, Judge Garth implies that *Zavala Santiago* constitutes strong support for the result reached below. *See infra* at pp. 760–61. To be sure, one factor motivating the court of appeals' decision to affirm the dismissal in *Zavala Santiago* was the failure of plaintiffs' counsel to appear at the pre-trial conference or to excuse himself for failing to appear. But Judge Garth omits that the court of appeals in *Zavala Santiago* also emphasized the nature of the litigation: the plaintiffs were seeking expedited injunctive relief. "When a claim for injunctive relief deserves and is granted priority treatment, a reasonable inference from the delay of the moving party is that he has little interest in vindicating whatever rights he may have." 553 F.2d at 712–13 (footnote omitted). Indeed, as the quoted passage suggests, the court in *Zavala Santiago* concluded that "[p]laintiffs deliberately thwarted the scheduling efforts of the district court in a variety of ways . . . ." *Id.* at 713. Unlike *Zavala Santiago,* the record in this case is not sufficiently developed for us to reach a similar judgment. *See infra* note 8.

to de Cultura Puertorriquena v. Rodriguez Morales, 538 F.2d 915 (1st Cir.1976); Boazman v. Economics Laboratory, Inc., 537 F.2d 210, 212 (5th Cir.1976).

■ The opinion in Donnelly, of course, was filed after the dismissal in this case; since it was not available to either the magistrate or the district court, they can hardly be faulted for not having followed its precepts. Donnelly is nonetheless applicable here,[7] and the record does not show whether the magistrate or the district judge considered sanctions less severe than dismissal. Had they done so, they might have concluded that one of those sanctions would have better served the interests of

justice. Under these circumstances, remand to the district court is required.

■ Without a doubt, appellant's counsel was seriously delinquent in his obligations to the court in October 1981: despite the magistrate's order, he failed to file a timely pretrial order or even to appear for a conference at a time he himself had selected.[8] On appellant's theory, the delinquency of his counsel amounted to only a matter of weeks; in the view of the appellee, the delinquency was egregious and long-standing.[9] See supra note 8. Regrettably, the magistrate's report is not particularly helpful in resolving this dispute, and the district court will doubtless wish to consider upon remand whether appellant's failures consti-

---

7. See supra note 1. The gravamen of Judge Garth's dissent appears to be an objection to the application of Donnelly to these facts. But to read Donnelly as narrowly as he does—limiting it to its facts—is to emasculate the salutary precept which it announces, a precept by which this panel is bound.

8. The magistrate's recommendation of dismissal seems to be predicated on appellant's failure to be prepared for pretrial conferences in June and September, as well as October. We also gather from the magistrate's report that the unpreparedness in each instance consisted solely of counsel's failure to submit a pretrial order pursuant to the magistrate's pretrial notice. The local rules for the District of New Jersey, however, require pretrial orders to certify that discovery is complete. According to the affidavit of appellee's counsel, discovery was still in its incipient stages at the time of the June and September conferences: interrogatories and requests for admissions were outstanding and no depositions were taken by either party until mid-September when Mercedes Benz deposed appellant and appellant deposed the key supervisory employee of Mercedes Benz. The magistrate, in fact, had given the parties until October 15 to complete discovery. In light of these facts and the New Jersey rule governing the temporal relationship between discovery and pretrial orders, the district court may wish to consider whether a dismissal can be justified on the ground that appellant was not prepared to file a pre-trial order during the months of June and September. Since Judge Fullam has commented in detail on Judge Garth's view that the events of June and September are sufficient to justify dismissal, see infra pp. 752–753 we shall not enter the lists here. We simply note that the district court may find it helpful to obtain an augmented record.

9. The age of a case, of course, is not dispositive, and district courts should be commended for attempting to achieve the "highest quality of justice in the shortest possible time at the lowest cost." Will, Judicial Responsibility for the Disposition of Litigation, 75 F.R.D. 117, 119 (1976). It is nevertheless appropriate to note, in the context of this discussion that, unlike Link, the case on which appellee principally relies, this is not an old case. In Link, the Supreme Court upheld the dismissal with prejudice of a personal injury claim when plaintiff's counsel failed to appear at a duly scheduled pretrial conference. The Supreme Court made clear that the sanction was justified only in view of the "drawn-out" history of that six year old case (the oldest on the court's docket) and plaintiff's counsel's lame excuse for not attending the conference. The Court concluded that, under those circumstances, it was reasonable to infer that the petitioner had been deliberately proceeding in a dilatory fashion.

Link also rapidly disposed of plaintiff's contention that dismissal of a plaintiff's claim because of his counsel's unexcused conduct imposes an unjust penalty on the client. As the court noted:

Petitioner voluntarily chose this attorney as his representative in this action and he cannot now avoid the consequences of the acts of omissions of this freely selected agent. Any other notion would be wholly inconsistent with our system of representative litigation in which each party is deemed bound by the acts of his lawyer-agent and is considered to have "notice of all facts, notice of which can be charged upon the attorney."

370 U.S. at 633, 82 S.Ct. at 1390; accord Walker v. Sun Ship Inc., 684 F.2d 266, 268–69 (3d Cir.1982).

tute a record of dilatory proceeding or contumacious conduct sufficient to justify a dismissal with prejudice under *Donnelly*. *See supra* pp. 749–750.

We do not suggest that *Donnelly* prevents the district court from dismissing this case with prejudice. We recognize the heavy workload of the district courts, and we are mindful that broad discretion should be accorded district courts in the management of their calendars. Indeed the district court on remand may find that the conduct of appellant's counsel was such that no less severe sanction than dismissal will serve the ends of justice.[10] But because of the severity of that sanction, we require that the court should not take such drastic action without making the prerequisite finding (and without adequately recording its reasons for doing so).[11]

Our remand in this case is no doubt fortuitous. But for the intervention of *Donnelly* we might have been obliged to affirm the dismissal, regardless of the underlying circumstances, because of the utter failure of appellant's counsel to demonstrate to the district court why the magistrate's report was in error. In general, the burden of establishing abuse of discretion is on the appellant. Fortunately for appellant, *Donnelly* works a reprieve. The naked record reveals no consideration of sanctions less severe than dismissal. The district court's order of dismissal will thus be vacated and the case remanded so that the district court may consider alternative sanctions, and, if appropriate, make findings that would support a dismissal with prejudice.

10. It is possible that even more disquieting events occurred before the magistrate, but because of the paucity of findings in this record, we have no way of knowing if anything warranting dismissal occurred.

11. Judge Garth, in his spirited dissent, charges the majority with having "gone a long way to discourage" early judicial intervention and management," and with "aiding and abetting those whose actions would deny justice by delay" by "failing to support conscientious dis-

FULLAM, District Judge, concurring:

I agree with Judge Becker that *Donnelly v. Johns-Manville Sales Corp.*, 677 F.2d 339 (3d Cir.1982), requires us to remand this case to the district court for reconsideration, and I concur in Judge Becker's Opinion except to the extent that it can be read as suggesting that dismissal might be an appropriate sanction in this case. I write separately to explain why I believe dismissal at this stage would be inappropriate, and to address certain of the concerns reflected in the dissenting opinion.

I agree with our dissenting colleague that a discretionary decision by a district court is reversible only for abuse of discretion, and that reversal is not warranted merely because the reviewing court would have exercised discretion differently. But dismissal of an eight-month-old case for failure to prosecute is, on its face, a sufficiently remarkable occurrence to justify appellate inquiry into the reasons for the dismissal.

In the present case, the district judge merely accepted the recommendation of the United States Magistrate. The reasons advanced by the magistrate in support of the recommendation are succinctly stated in her report: "To date, plaintiff has failed to comply with this court's order and has failed to prosecute this case." The report makes clear that the magistrate was referring to the repeated failures of plaintiff's counsel to comply with the magistrate's requirements respecting the preparation of a final pretrial order. It is necessary to view these failures in the context in which they occurred.

On January 26, 1981, plaintiff instituted this action, using a form of complaint supplied by the court for use in Title VII cases.

trict court judges who take pride in managing these calendars effectively." *Infra* at 761. With respect, Judge Garth has overstated his case. The opinion does not inhibit a district court—in this or any other case—from dismissing with prejudice; it merely recognizes the potentially harsh consequences of dismissal with prejudice and requires the court to consider whether a lesser sanction comports with the interest of justice.

752

The form complaint is a model of clarity and simplicity. Anyone reading that complaint learns immediately and unmistakably what the issues in this litigation are: Plaintiff claims simply that on a specified date he was discharged from his employment by the defendant because of racial considerations. The factual issues to be resolved at trial (or perhaps by summary judgment) are straightforward: Was plaintiff's race a factor in the discharge decision, or was plaintiff discharged for valid, non-discriminatory, reasons as claimed by the defendant?

In the normal course, it would seem that both sides could adequately prepare for an efficient trial with minimal effort. The defendant was entitled to know what support plaintiff might have for his assertion of racial discrimination, the plaintiff was entitled to know what proof the defendant would advance in justification of the discharge, and both sides were entitled to submit their dispute for resolution in accordance with the Federal Rules of Civil Procedure. And, of course, the court was entitled to manage the case in order to achieve a prompt and efficient resolution of all issues of fact and law which needed to be resolved.

The case was referred to the United States Magistrate for pretrial processing. On March 11, 1981, approximately six weeks after the complaint was filed, the magistrate issued a six-page pretrial notice, announcing a series of elaborate, burdensome, and largely wasteful steps that the parties would have to undertake in preparation for trial. The magistrate is not to be faulted for having sent the notice, because she was merely complying with a local rule of court mandating that procedure in all civil cases.

It should be noted that similar local rules have been struck down in other circuits, as violative of F.R.C.P. 16. *J.F. Edwards Construction Co. v. Anderson Safeway, et al.,* 542 F.2d 1318 (7th Cir.1976); *Identiseal Corp. of Wisconsin v. Positive Identification Systems, Inc.,* 560 F.2d 298 (7th Cir.1977); *McCargo v. Hedrick,* 545 F.2d 393 (4th Cir. 1976). As stated by the *McCargo* court,

"The idea [of pretrial procedures] is to help the lawyers and the litigants—not to exhaust them ... (545 F.2d at p. 396).

"Rule 16 was never meant to make lawyers try a case on paper instead of in a courtroom. In fact, it contemplates that the district judge himself will dictate the pretrial order. Of course, the court may seek the aid of counsel in preparing the order, but Rule 16 should not be implemented in such a manner that the pretrial procedure itself is more difficult and time-consuming than the actual trial ...." (545 F.2d at p. 401).

It is the failure of plaintiff's counsel to render full and timely compliance with the requirement, set forth in the magistrate's notice, that plaintiff's counsel must bear the primary responsibility for preparing an elaborate final pretrial order that caused the dismissal of the action. In my view, dismissal for that reason can be justified only if the requirement was reasonable. While a district court must be accorded broad discretion in managing its calendar, that principle does not shield from appellate review utterly unreasonable and counterproductive "make-work" requirements which serve no valid case-management goal.

The notice employed in this case required plaintiff's counsel to prepare a final pretrial order which includes the following:

1. Under item 6, "A statement of the facts claimed by (a) plaintiff, (b) defendant, (c) other parties."

2. Under item 7, "A comprehensive written statement of all uncontested material facts."

3. Under item 8, "A *single listing* of the contested issues of fact." This is followed by the parenthetical advice, "(This does not mean that counsel must concur in a statement of the issues; it simply means that they must list in a single list all issues of fact. Where the parties do not agree on an issue, there shall be a succinct indication of the reason for their difference)." This is followed by a detailed listing of six different kinds of information which, if involved in the case, "shall be specified with particularity."

4. Under item 9, "A *single listing* of the contested issues of law."

5. In addition, "Suggested findings of fact and suggested conclusions of law separately stated in separately numbered paragraphs shall be delivered to the court and opposing counsel not later than *two weeks* prior to the trial date, unless specific leave to the contrary is granted by the court. Not later than *one week* prior to trial each side shall deliver to the court and opposing counsel a critique of the other side's suggested findings. This critique shall also indicate where counsel is in agreement with a suggested finding. The suggested findings of fact should contain a detailed listing of the relevant material facts that the party intends to prove. They should not be in formal language, but should be in simple narrative form. The proposed conclusions of law should contain a full exposition of the legal theories that counsel urges."

6. Under item 15(b), "In either a jury or non-jury case, add the following provision: 'Each party shall file with the court a separate memorandum of contentions of fact and law at least *ten days* prior to trial. This memorandum should contain a full exposition of the theory of the case and a statement, in narrative form, of what the party expects to prove [except that matters previously covered in the suggested findings of fact need not be repeated in the trial memorandum]."

7. A requirement that all witnesses be listed, together with "a statement of the general subject matter of their testimony."

8. All exhibits are not merely to be listed, but also described. Moreover,

"11(a) Each list of exhibits first should describe those that are to be admitted without objection, and then those to which there will be objection, noting by whom the objection is made (if there are multiple adverse parties), and the nature of the objection. Markers (obtained from the Clerk) should be attached to all exhibits at the time they are shown to opposing counsel during preparation of the pretrial order."

More than forty years ago, the Federal Rules substituted notice pleading for fact pleading, and supposedly freed courts and counsel from the rigors and pitfalls of common-law pleadings. The Federal Rules contemplate that the pertinent facts will be developed before trial through discovery or through voluntary exchanges of information. It is, of course, not objectionable to require a recapitulation of pertinent details in a pretrial submission, so that the court and the parties will have the necessary information conveniently available. But there is plainly no warrant for requiring endless repetition, or for resurrecting the equivalent of common-law technicalities.

Other features of the pretrial notice in this case bear mention. Counsel were required either to certify that all discovery was completed, or to specify in the final pretrial order what remaining discovery was contemplated. Just how anyone could be expected to file a comprehensive final pretrial order before completion of discovery is not explained. Virtually all experienced judges and trial lawyers would agree that it is pointless to hold a final pretrial conference, or to submit a "final" pretrial order, too far in advance of trial. Yet the notice in this case required counsel to submit a final pretrial order in June, in a case which had been commenced at the end of January, and in which the October 15 discovery cutoff was not established until September. And the prescribed form of pretrial order plainly contemplates submission far in advance of trial.

It would unduly lengthen this Opinion to recite the many other features of this six-page pretrial notice which are either facially invalid or highly questionable. It suffices to state that the combination of mandatory, precatory, and cautionary provisions rival the Internal Revenue Code and Regulations in complexity; their application to particular cases seems inevitably destined to occasion frequent recourse to the court for resolution of disputes, not over the merits of the case or compliance with the Federal Rules, but over whether the court's pretrial requirements are being properly observed, or should be altered.

The final point to be emphasized is that this pretrial notice imposes grossly disproportionate burdens upon counsel for the respective parties. Plaintiff's counsel is assigned the lion's share of the work involved, not just in preparing his own case for trial, but in achieving, formulating, and presenting a document which assimilates his opponent's case. One searches the Federal Rules in vain for authorization for that lack of balance.

The "litigation explosion" is a serious problem. Everyone agrees that increased efficiency in the disposition of litigation is essential, and that early and continued judicial management of cases is desirable. There are two problems to be faced, congested calendars and excessive litigation expense. Both problems are appropriately addressed by pretrial procedures which, on the one hand, both identify the cases which should go to trial and the issues in those cases which need to be resolved, and also ensure that the issues which need to be tried are efficiently presented; and, on the other hand, require no greater expenditure of time and effort by counsel than is reasonably necessary to achieve those goals.

It is undoubtedly true that congested trial dockets could be alleviated by erecting such formidable pretrial barriers that only hardy souls with ample resources would have the stamina to surmount them, but no one would seriously commend that device as a solution to court congestion. Unfortunately, the mechanical application of elaborate pretrial requirements to simple cases is a step in that direction, albeit unintentional. Adoption of that approach is especially unfortunate in cases where, as here, there is such substantial disparity between the parties, in terms of their financial resources and the competency of their counsel.

I hold no brief for plaintiff's counsel in this case. His appellate performance has been abysmal, and the record suggests his efforts at the trial level were similarly flawed. But the *in terrorem* impact of the pretrial notice with which he was confronted cannot be ignored, in assessing the appropriate sanction for counsel's default. In the final analysis, his chief error was that he attempted, ineffectually and tardily, to comply with the notice, whereas he should have resisted it, or sought relief from it. I have no doubt that some relief from the strictures of the pretrial notice would have been granted by the district judge in this case, had application been made. For counsel's failure to seek such relief, dismissal of the action is, I believe, entirely too severe a sanction.

I do not overlook the distinct possibility that perceived weaknesses in his client's cause may well have contributed to counsel's dilatoriness and inaction. If so, summary disposition on the merits might be appropriate; but the merits of the case are not before us, nor were they before the district court.

I therefore concur in the conclusion that the judgment of dismissal must be vacated, and the case remanded for further proceedings, which may include the imposition of appropriate sanctions. While it is my view that, on this record, dismissal would not be an appropriate sanction for counsel's irregularities to date, I acknowledge the possibility that the district judge may be confronted with a more complete record which might support a different conclusion. In order to achieve a definitive disposition of this appeal, I concur in the judgment.

GARTH, Circuit Judge, dissenting.

Judge Becker's opinion announcing the judgment of the court vacates the district court's order dismissing an action in which the plaintiff's counsel repeatedly, and without excuse, failed to comply with pretrial orders of the district court. It does so without even an express holding that the district court abused its discretion.

Judge Fullam in his separate opinion on the other hand, reaches the same conclusion as Judge Becker, but does so by rejecting the District of New Jersey's rule providing for pretrial orders—a rule promulgated by the judges of the district three years ago to establish uniformity in pretrial practice.

In my judgment, both opinions reach the wrong result: Judge Becker's, because it incorrectly interprets and incorrectly applies this court's decision in *Donnelly v. Johns-Manville Sales Corp.*, 677 F.2d 339 (3d Cir.1982); and Judge Fullam's, because he decides an issue never presented to the district court and never presented to us. Moreover, and of even greater importance, in my opinion, the mandate resulting from these two opinions unjustifiably undercuts the ability of district court judges to control their own dockets.

Because I believe that the record clearly establishes that the district court had more than sufficient reason for dismissing this action, and therefore properly exercised its discretion, and because no basis exists for an attack upon New Jersey's pretrial rule, I dissent.

## I.

Because the district court's action in dismissing Titus's complaint must be viewed against the factual background which preceded it, it will be helpful to recite the events leading up to the district court's order of November 30, 1981.

This suit was filed on January 26, 1981. On March 11, 1981, the Clerk of the court sent a pretrial notice to counsel for the parties, setting June 8, 1981 as the date for a pretrial conference before a federal magistrate. The pretrial notice that was sent to counsel was the notice that had been approved and promulgated by the judges of the District of New Jersey. It was, and is, utilized by all the active judges in the Newark vicinage of the district court and thereby provides uniformity for all pretrial proceedings conducted by both magistrates and judges.[1] Among other things, the pretrial notice, which by virtue of its adoption had and has the effect and dignity of an order, provides:

Counsel for all parties in the respective cases are directed to confer *in person (face to face) at their earliest convenience* for the purpose of arriving at all prior stipulations and for the exchange of documents that will be offered in evidence at the trial. It shall be the duty of counsel for plaintiff to initiate this conference, and the duty of other counsel to respond. If, after reasonable effort, any party cannot obtain the cooperation of other counsel, it shall be his duty to communicate with the court. The conference of counsel shall be held at least seven days prior to the date of the scheduled Pre-Trial Conference in order that counsel for all parties can furnish each other with a statement of the real issues each party will offer evidence to support, eliminating any issues that might appear in the pleadings about which there is no real controversy, and, including in such statement issues of law as well as ultimate issues of fact from the standpoint of each party. *Counsel for plaintiff then will prepare a Pre-Trial Order and submit it to opposing counsel, after which all counsel jointly will submit the original and one copy of the final draft of the proposed Pre-Trial Order to the judge.*

Appellee's App. at 12.

Despite these express provisions of the court's pretrial notice, the record does not reveal that Titus's counsel, on whom the primary burden of compliance was placed, complied with any of them. At the pretrial conference held on June 8, 1981, Titus's attorney was unprepared and no proposed pretrial order was submitted. The same thing happened at a second conference which the court scheduled for September 10, 1981. Titus's counsel was similarly unprepared and had not complied with the court's directions at a third conference held on October 15, 1981. At the October 15 meeting, the magistrate did not arbitrarily set an adjourned date for the next pretrial

---

1. The pretrial notice was never filed below and therefore is not part of the record on appeal even though it is contained in the appendix filed by the appellee. Appellee's App. at 12. Since there is no dispute that the pretrial notice was sent to the appellant, and because it is by rule utilized by all the active judges in the Newark area, I take judicial notice of its contents.

conference. Rather, she asked Titus's attorney to choose any date which he desired for a pretrial conference. It was Titus's attorney who, given the option of selecting the scheduled date for the next pretrial conference, chose October 22, 1981. The magistrate's report reveals that Titus's attorney was then "directed to present a pretrial order prepared pursuant to the directions contained in the original pretrial notice no later than October 22, 1981." Appellant's App. at 1a.

As of November 6, 1981, the proposed pretrial order had still not been filed. The magistrate then issued her report to the district court, the text of which may be found in Judge Becker's opinion, at 748. That report recommended that the complaint be dismissed because the "plaintiff has failed to comply with this court's order and has failed to prosecute this case." *Id.* On November 30, 1981, the district court, on the basis of the magistrate's report, dismissed Titus's action. This appeal followed.

I emphasize that anything other than the matters that I have set forth above are outside the record in this case and therefore cannot be considered by this court.[2] Indeed, this principle is acknowledged in Judge Becker's opinion announcing the judgment of the court, where he recognizes that in reviewing the district court's exercise of discretion in dismissing an action pending before it, this court is limited to considering only matters of record [3] (Becker J. Op. at 748 n. 4). Unfortunately, however, references to extra-record materials (letters, affidavits) appear in Judge Becker's opinion. But, because the result which Judge Becker reaches depends wholly on *Donnelly, supra,* it is impossible to tell whether these extra-record materials influenced his determination in any way.

It is clear to me that the only record to which we may look in this case establishes that Titus's counsel was guilty of deliberate, dilatory actions, if not contumacious conduct; that four orders of the district

2. The record in this case is virtually non-existent. The appendix beggars description. The appellant's appendix consists of the magistrate's report and recommendation, a one-page document. Despite the requirements of Fed.R. App.P. 30 and Third Cir.R. 10, no docket entries are to be found, and neither the district court order dismissing the complaint nor the notice of appeal are included in the appellant's appendix. The appellee sought and was granted leave to file its own appendix, and it is only there that the clerk's (as distinguished from the district court's) order dismissing the action can be found. The appellee did, however, furnish this court with the notice of appeal and with the pretrial notice from which we have quoted. The other items included in the appellee's appendix, consisting of letters to the court, an affidavit prepared by appellee's counsel, and certain objections and proposed amendments to the "Plaintiff's Statement of Proceedings," are not part of the record in this case. *See infra* note 3 and accompanying text. Nor does the record in this court reveal any motion to supplement the district court record. Thus, for all practical purposes, this appeal has come before the court on no more than the magistrate's report and recommendation, which was adopted by the district court, and a standard form of pretrial notice.

3. Fed.R.App.P. 10(a) provides that the record on appeal shall be composed of "the original papers and exhibits filed in the district court, the transcript of proceedings, if any, and a

certified copy of the docket entries prepared by the clerk of the district court...." *See Daiflon Inc. v. Allied Chemical Corp.,* 534 F.2d 221, 226–27 (10th Cir.), *cert. denied,* 429 U.S. 886, 97 S.Ct. 239, 50 L.Ed.2d 168 (1976) (appellate court cannot consider deposition not filed in the district court even though it was brought to the district court's attention by briefs and oral argument). This court and other federal appellate courts have consistently held that discovery materials not filed in the district court prior to its decision are not part of the record on appeal. *See, e.g., In re Arthur Andersen & Co.,* 621 F.2d 37, 39–40 (1st Cir.1980); *Fleming v. Gulf Oil Corp.,* 547 F.2d 908, 910–11 (10th Cir.1977); *Busse v. United States,* 542 F.2d 421, 427–28 (7th Cir.1976); *Jaconski v. Avisun Corp.,* 359 F.2d 931, 936 & n. 11 (3d Cir.1966); *Dictograph Products Co. v. Sonotone Corp.,* 231 F.2d 867 (2d Cir.), *appeal dismissed per stipulation,* 352 U.S. 883, 77 S.Ct. 104, 1 L.Ed.2d 82 (1956). Indeed Rule 10(a) has been interpreted to limit appellate review to only those materials filed and "in fact presented to the district court." 16 C. Wright & A. Miller, Federal Practice and Procedure § 3956, at 386 (1977), at 153 (Supp.1981); 9 J. Moore, Moore's Federal Practice ¶ 210.04, at 10–15 (1982).

None of the letters or affidavits to which Judge Becker refers, was ever filed and consequently they do not appear on the district court docket.

court were disobeyed; that the court was unable to obtain compliance with its orders for the ten months during which this proceeding was pending; and that there was complete justification for the district court's exercise of discretion in dismissing Titus's action. As I point out in a later portion of this opinion, *Donnelly* does not address these circumstances and thus is inapposite.

## II.

There can be no question but that the district court had the power to order the attorneys for both parties to prepare for, and to appear at, a pretrial conference. *See* Fed.R.Civ.P. 16. The district court also had the inherent authority, upon disobedience of such an order, to act *sua sponte* to impose sanctions on the offending party and his counsel, including dismissal of the plaintiff's action with prejudice for failure to prosecute. *Link v. Wabash Railroad,* 370 U.S. 626, 629, 82 S.Ct. 1386, 1388, 8 L.Ed.2d 734 (1962); Fed.R.Civ.P. 41(b). To this point, the panel is in complete agreement. Furthermore, both Judge Becker and Judge Fullam concede that in this case, some sanction was appropriate for Titus's counsel's repeated failure to comply with the pretrial calendar set by the court. Where I part company with them, however, is that I believe the selection of the appropriate sanction is best determined by the district court—the court that best understands the instant litigation and the docket problems to which it contributes—and not by the court of appeals. It is the district court's discretion, not ours, that should be exercised in making such a decision.

This court has indeed emphasized that "dismissal is a drastic sanction and should be reserved for those cases where there is a clear record of delay or contumacious conduct by the plaintiff." *Donnelly, supra,* 677 F.2d at 342; *accord, Harris v. Cuyler,* 664 F.2d 388, 390–91 (3d Cir.1981); *Marshall v. Sielaff,* 492 F.2d 917, 918 (3d Cir.1974); *Dyotherm Corp. v. Turbo Machine Co.,* 392 F.2d 146, 148–49 (3d Cir.1968). But we have also repeatedly stated that "the scope of appellate review of an order of dismissal is extremely narrow, confined solely to whether the trial court has abused its discretion." *Marshall, supra,* 492 F.2d at 918 (citation omitted); *accord, Spering v. Texas Butadiene & Chemical Corp.,* 434 F.2d 677, 680 (3d Cir.1970), *cert. denied,* 404 U.S. 854, 92 S.Ct. 97, 30 L.Ed.2d 95 (1972); *Kenney v. California Tanker Co.,* 381 F.2d 775, 778 (3d Cir.1967), *cert. denied,* 390 U.S. 904, 88 S.Ct. 817, 19 L.Ed.2d 870 (1968) (both requiring a showing of "a clear abuse of discretion").

In my view, Titus has failed to carry his burden—and it is his—of showing why the district court's dismissal of his action was an abuse of discretion in light of his counsel's repeated and unexplained failure to comply with explicit pretrial directives · of the court.[4] No affidavits offering an explanation or excuse for Titus's conduct appear in the threadbare record.[5]

---

4. Titus argues that since the responsibility for the delay lies with his attorney, he, the client, should not be penalized. This argument was considered and rejected by the Supreme Court in *Link v. Wabash R.R.,* 370 U.S. 626, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962), where the Court observed that "[p]etitioner voluntarily chose this attorney as his representative in the action, and he cannot now avoid the consequences of the acts or omissions of this freely selected agent." *Id.* at 633–34, 82 S.Ct. at 1390. That a client may suffer from his attorney's mistakes is "an unavoidable side effect of the adversary system," *Corchado v. Puerto Rico Marine Management, Inc.,* 665 F.2d 410, 413 (1st Cir.1981); indeed, the adversary system would rapidly break down if an attorney's actions, or inaction, could not bind his client. The client's recourse for perceived legal malpractice lies in an action against his attorney. *See generally Barasch v. Micucci,* 49 N.Y.2d 594, 404 N.E.2d 1275, 427 N.Y.S.2d 732 (1980) (holding that "law office failures" cannot excuse failure to prosecute; lower court abused its discretion in refusing to dismiss the action).

5. *See* note 2 *supra.* Although Titus's *brief* contains a lengthy recitation of the events leading up to the dismissal in an attempt to excuse Titus's dilatory conduct, such arguments of counsel are not part of the record and, as such, cannot be considered by this court. *See Thornton v. United States,* 493 F.2d 164, 167 (3d Cir.1974). Moreover, the "record" made by Titus's counsel before the district court is almost as dismal as the record on this appeal. Although plaintiff's counsel could have made a

Judge Becker, while recognizing "the utter failure of appellant's counsel" to establish an abuse of the district court's discretion, (Becker, J., Op. at 751), relies solely on *Donnelly, supra,* for the proposition that, before dismissing a case with prejudice for failure to prosecute, "the district court must first consider whether less severe sanctions would serve the ends of justice." *Id.* at 747. However, the holding in *Donnelly* was grounded on the special circumstances of that case and in my opinion is limited to the facts presented there. Those facts differ dramatically from the facts with which the district court was presented here.

### A.

In *Donnelly,* the complaint was dismissed because the plaintiff had failed to timely retain local counsel in a transferred action. The plaintiff's Texas counsel had originally filed an action in the District Court for the Eastern District of Texas. Subsequently, the action was calendared in the Newark vicinage but finally allocated to Trenton. The Notice of Allocation and Assignment received by plaintiff's Texas counsel stated that New Jersey counsel had to file an appearance within twenty days of receipt of the notice.

When local counsel failed to file an appearance within the prescribed time, an order was issued on June 1, 1981 returnable June 15, 1981 at 10:00 a.m., directing plaintiff's Texas counsel to show cause why the action should not be dismissed. Despite a telephone call from the district court's chambers to plaintiff's Texas counsel, local counsel failed to file an appearance on the morning of June 15th when the Order to Show Cause was returnable. However, at about 3 p.m. that afternoon, no more than five hours after the time had passed for the filing of counsel's appearance, the district court was informed by a New Jersey attorney that an appearance would be entered by him on behalf of the plaintiff. Never-

theless, on the following day, the district court dismissed the complaint.

Donnelly immediately moved for the reinstatement of his action supported by an affidavit which explained in detail all the reasons why the appearance of New Jersey counsel was tardy. The district court, however, refused to reinstate the complaint. On appeal, this court found that the district court had abused its discretion. The order of dismissal was vacated and on remand the district court was instructed to consider the imposition of a sanction less than dismissal. In so holding, the court noted "that the principles disfavoring dismissals with prejudice apply with *special force* in cases where the misconduct upon which a dismissal with prejudice is sought to be predicated *is the failure of a plaintiff to obtain local counsel in a transferred action."* 677 F.2d at 343–44 (emphasis added).

A greater difference in factual context between *Donnelly* and *Titus* can hardly be imagined. In *Donnelly* the "nature of the noncompliance was not refusal to proceed with discovery or to follow an order of the court dealing with discovery...." *Id.* at 343. In *Titus,* however, these very circumstances that the *Donnelly* court took great pains to except and distinguish, are present. Indeed, in the instant case, Titus's counsel had refused to obey not one, but four, separate orders of the court—all of which had been entered precisely for the purpose of overseeing the completion of discovery in order to set the case for trial. Moreover, the record in *Donnelly* revealed "no history of [the plaintiff's attorney] *deliberately* proceeding in a dilatory fashion." *Id.* (quoting *Chandler Leasing Corp. v. Lopez,* 669 F.2d 919, 920 (4th Cir.1982) (per curiam) (emphasis in original)). Local counsel in *Donnelly* was only hours late in complying with the court's order. Here, however, the ten month history of noncompliance revealed by the record clearly demonstrates that Titus's attorney engaged in the very pattern of

motion to vacate the order of dismissal, and supported such a motion with affidavits, he failed to do so. As discussed previously, all that appears, even extra-record, is a letter dat-

ed November 13, 1981, addressed to the district court judge, in which Titus's counsel opposes the recommendation for dismissal made by the magistrate.

deliberate, dilatory action for which even *Donnelly* would impose dismissal as a sanction.

Most importantly, at least in *Donnelly,* a record had been developed which arguably could have demonstrated to the district court that the imposition of a sanction less severe than dismissal may have been warranted. In the affidavit filed with the district court, Texas counsel explained in detail the problems encountered in his efforts to obtain New Jersey counsel. He related that two New Jersey firms which he had approached, could not undertake Donnelly's representation. Finally, on the morning of the show cause hearing, he was successful in securing local counsel. Unfortunately, the counsel retained by him could not appear at the hearing. Counsel did, however, advise the court within hours after the hearing, that he would file an appearance on behalf of plaintiff.

In this case, even Judge Becker concedes that Titus's counsel utterly failed "to demonstrate to the district court why the magistrate's report was in error" (Becker, J., Op. at 751). Because this record is totally barren of any mitigating explanations as to why Titus's attorney violated each and every of the four orders issued by the court, the district court could not exercise its discretion to do other than dismiss the action. On this record, the district court was totally uninformed as to any consideration it might have taken into account in considering a lesser sanction. And, as I have previously stressed, the fault in not developing an adequate record for this purpose must be laid at the feet of plaintiff's attorney.

It is therefore clear to me that *Donnelly's* discussion of lesser sanctions simply does not carry the weight and significance attributed to it by the other members of this panel. Whatever *Donnelly's* message may be insofar as timely filing of appearances by local counsel are concerned, its holding can have no applicability to the facts presented in this case.[6]

Even if *Donnelly* was deemed to apply to every dismissal of an action by a district court judge—a proposition which I reject—that does not explain why we should give retroactive effect to *Donnelly* here. Indeed, I believe by doing so, it gives Titus's attorney a windfall to which he is unquestionably not entitled. Even Judge Becker recognizes this fact for he observes: "[f]ortunately for appellant, *Donnelly* works a reprieve" (Becker, J., Op. at 751).

In *Quality Prefabrication v. Daniel J. Keating Co.,* 675 F.2d 77 (3d Cir.1982), this court, in virtually identical circumstances, refused to give retroactive effect to a new supervisory rule formulated in that decision. In *Quality Prefabrication,* the district court dismissed a complaint with prejudice when the plaintiff failed to comply with one of its discovery orders. It subsequently refused to reinstate the complaint. In so ruling, the district court apparently relied on Fed.R.Civ.P. 37(b)(2)(B) and (C) but it failed to articulate the reasons for reaching those decisions.

On appeal, we decided, in the exercise of our supervisory authority over the district courts, "that *in the future* a dismissal of a complaint with prejudice as a Rule 37 sanction must be accompanied by some articulation on the record of the court's resolution of the factual, legal, and discretionary issues presented." *Id.* at 81 (emphasis added). However, because our holding had established a new rule for this Circuit, we gave that rule only a prospective application. We ruled that we could not "fault the district court for not following a special procedure that heretofore was not required." *Id.* I suggest that the same result should obtain here, particularly since the judgment of this court now results in a new rule respecting dismissals of actions in

---

**6.** The majority opinion not only holds that *Donnelly* represents the law of this Circuit and must be applied in all "lack-of-prosecution" dismissals (Becker, J., Op., at 746–47), but goes on to announce that *Donnelly* binds the panel on the facts of this case, *id.* at 750 n. 7. I cannot agree. I suggest that *Donnelly's* holding must be read in the context of the *Donnelly* case, and while it may be the law of this Circuit in that context, it cannot be binding on this panel in the *Titus* setting.

cases where court orders designed to streamline and control trial dockets are persistently violated.

## B.

*Zavala Santiago v. Gonzalez Rivera*, 553 F.2d 710 (1st Cir.1977), is cited in Judge Becker's opinion as authority for the imposition of various lesser sanctions which the district court may employ to sanction counsel for failing to comply with the court's order (Becker, J., Op., at 749 n. 6).

Initially it should be observed that the court in *Zavala Santiago* rejected any such "lesser sanction" rule and indeed affirmed the dismissal of Santiago's and Cosme's action even though their complaint had been filed only four months earlier.[7]

In *Zavala Santiago*, the district court dismissed plaintiffs' case for failure to prosecute because their counsel, like Titus's counsel, had failed to comply with pretrial orders and had failed to even appear at a pretrial conference. The First Circuit upheld the dismissal of the action even though the record (which was substantially more developed than the *Titus* record) did not contain "some of the factors which would counsel strongly in favor of an outright

dismissal...." *Id.* at 712. In fact, the record in *Zavala Santiago* indicates that plaintiffs' counsel's conduct was far less egregious than the conduct of counsel for Titus. Zavala Santiago's case had been pending for only four months before dismissal, while Titus's action was pending for almost ten months before dismissal.

Finally, the court of appeals in *Zavala Santiago* noted, in affirming the district court, that the district court's dismissal, (as was the dismissal in the *Titus* case here, *see infra* at 763–764), was not only based on the disregard of its orders but also on "plaintiffs' counsel's failure either to appear at the pre-trial conference or properly to excuse himself." *Id.* at 713. The court found such conduct to be "not only an unprofessional and discourteous act; it indicated plaintiffs' lack of interest in vindicating whatever rights they might have had." *Id.* The court's further statement on this issue is exceedingly apt in our context:

Although dismissal is an extreme sanction, we think it appropriate here. Plaintiffs deliberately thwarted the scheduling efforts of the district court in a variety of ways, and quite apart from the fact that plaintiff's misconduct suggested they

---

7. The reliance in the majority's opinion on *Zavala* (Becker, J., Op., at 749 n. 6) is somewhat surprising in light of *Zavala's* discussion and holding: *Zavala* makes the strongest case for the argument that I advocate here and which the majority rejects. In *Zavala*, even while acknowledging the fact that lesser sanctions may many times be appropriately imposed, Chief Judge Coffin nonetheless recognized that the district court's discretion should be upheld. The First Circuit therefore affirmed that court's dismissal of Zavala's action. The majority, in an effort to distinguish *Zavala*, points to the fact that Zavala's action was for an injunction and claims further that the record in *Zavala* was more fully developed than the record here (Becker, J., Op., at 749 n. 6).

The short answer to the majority's attempted distinction is that the *Zavala* court's holding did not depend on the nature of Zavala's claim. Rather, the discussion in *Zavala* focused on the "precipitating event[s]" of counsel's failure to appear at the pretrial conference, the plaintiff's lack of interest in pursuing his rights, and the plaintiff's failure to take steps to prosecute his case. 553 F.2d at 713. Moreover, if any inference is to be drawn regarding delays of a mov-

ing party, such an inference is inescapable in this case where Titus' counsel did not even appear on the date which he himself selected for the final pretrial conference.

As to the comparisons of the record in this case with *Zavala's*, two things must be said. First, it was the plaintiff's burden to develop the *Titus* record; any inadequacy in this record must be charged to Titus. Of greater significance, however, is that the record in this case, even despite Titus' delinquencies, is more comprehensive in terms of actions which precipitated dismissal than was the record in *Zavala*.

Indeed, the majority throughout its opinion makes much of the fact that it is unhappy with the record in this case, and so has attempted to "supplement" that record with extra-record materials in order to justify its reversal of the district court. (Becker, J., Op., at 748 n. 4, 750–751.) In light of Titus' failure to develop a record which could inform the district court as to explanations which might bear on the imposition of lesser sanctions, I find it remarkable that the majority relies on the inadequacy of the record as the ground for reversing the district court.

were not interested in prosecuting their claim, we think the district court's action was also justified as a means of deterring others from frustrating the district court's well justified efforts at docket management and at ensuring the orderly progress of litigation.

*Id.*

## III.

Although district court judges should not impose the dismissal sanction casually or arbitrarily, in the end, the test on appeal is whether the district court abused its discretion in deciding that a dismissal was necessary to maintain control over counsel who appear before it and over its judicial calendar.

The opinions of Judges Becker and Fullam, in vacating the dismissal of this action, in which the plaintiff *four times* failed to comply with pretrial orders of the district court, now signal the bar that a district court's procedural rules and orders can be ignored or can be violated with impunity. By so doing, this court significantly undermines the ability of district court judges to manage litigation efficiently and deprives the district court of one of the few sanctions available to it. Recently this court declared that "[w]e will not interfere with a trial court's control of its docket 'except upon the clearest showing that the procedures have resulted in actual and substantial prejudice to the complaining litigant.'" *In re Fine Paper Antitrust Litigation,* 685 F.2d 810, 817 (3d Cir.1982) (citation omitted). This court today disregards this sound policy.

Although the sanction of dismissal may appear harsh when a case is examined in isolation, the existence of cases like this one clogging our judicial system significantly interferes with the ability of diligent litigants to obtain a prompt hearing in the courts. By failing to support conscientious district court judges who take pride in managing their calendars efficiently and effectively and who properly sanction litigants who show little interest in moving their cases, the court today aids and abets those whose actions would deny justice by delay.

Recently, at the 45th Judicial Conference of this Circuit, a panel of distinguished speakers who were concerned about trial management, unanimously agreed that early judicial intervention and early judicial management of litigation were essential if the judges and the courts were to keep abreast of the ever swelling volume of cases being filed. Yet here, the opinions of Judges Becker and Fullam have faulted a district court judge for performing his functions of giving early attention to the *Titus* litigation, and of scheduling and re-scheduling pretrial conferences in an effort to control the progress of the case—functions which he performed precisely in accordance with these recommended procedures.[8] I suggest that both opinions have gone a long way to discourage early judicial intervention and to discourage early judicial management. In particular, Judge Fullam would reverse the district court for following a rule and order of the district which has never before been challenged and was not challenged here. I address that subject in a later portion of this opinion.

A review of this court's cases in which dismissal was ordered for failure to prosecute discloses that the district court's determinations have rarely been disturbed. *See Marshall, supra; Spering, supra; Kenney, supra; Torino v. Texaco, Inc.,* 378 F.2d 268 (3d Cir.1967); *Ordnance Gauge Co. v. Jacquard Knitting Mach. Co.,* 265 F.2d 189 (3d Cir.), *cert. denied,* 361 U.S. 829, 80 S.Ct. 79, 4 L.Ed.2d 72 (1959); *Shim v. Kikkoman Int'l Corp.,* 509 F.Supp. 736 (D.N.J.), *aff'd mem.,* 673 F.2d 1304 (3d Cir.1981); *S & K*

---

8. Indeed, the district court judge was under statutory compulsion to expedite this case—a Title VII action—in every way. *See* 42 U.S.C. § 2000e–5(f)(5) (1976):

It shall be the duty of the judge designated pursuant to this subsection to assign the case for hearing at the earliest practicable date and to cause the case to be in every way expedited. If such judge has not scheduled the case for trial within one hundred and twenty days after issue has been joined, that judge may appoint a master pursuant to rule 53 of the Federal Rules of Civil Procedure.

*Airport Drive-In, Inc. v. Paramount Film Distrib. Corp.,* 58 F.R.D. 4 (E.D.Pa.), *aff'd mem.,* 491 F.2d 751 (3d Cir.1973); *Bendix Aviation Corp. v. Glass,* 32 F.R.D. 375 (E.D. Pa.1961), *aff'd per curiam on opinion below,* 314 F.2d 944 (3d Cir.), *cert. denied,* 375 U.S. 817, 84 S.Ct. 51, 11 L.Ed.2d 52 (1963).

Although Titus's complaint was dismissed less than a year after it was filed (within ten months), in contrast to the longer periods of delay involved in the cited cases, I know of no rule in this circuit which establishes a minimum period of time that must pass before a district court may dismiss a case with prejudice for failure to comply with the court's directives. Such a rule, either express or implied, would create a *de facto* grace period that dilatory attorneys could exploit to avoid the rigors of court orders and procedural rules. Consequently, the delay involved in any case, while certainly not irrelevant, cannot be dispositive in determining the propriety of the sanction imposed by the district court.

### A.

My conclusion that the district court did not abuse its discretion in dismissing Titus's case would be the same even if it were permissible to take into account (which it is not) the extra-record materials submitted by the parties. I observe that even in the letter written by Titus's counsel to the district court (a letter not properly before us) no explanation or excuse is offered for his failure to comply with four pretrial directives of the court.

Moreover, the letter and affidavit submitted by appellee's counsel indicate that the magistrate's report understated the egregiousness of Titus's counsel's conduct. These materials establish that not only was Titus's counsel unprepared to proceed on October 22, 1981, but that he also did not even bother to appear on that date. Appellee's App. at 21, 25. These materials also indicate that Titus's counsel failed to comply with the magistrate's order issued on September 10, 1981 that he complete dis-

covery by October 15, 1981 and answer defendant's interrogatories in full. Appellee's App. at 22, 24, 25. In addition, appellee's counsel's letter indicates that as early as September 10, 1981, the magistrate had told Titus that he should seek a voluntary dismissal if he did not intend to prosecute the case, and that again, on October 15, 1981, Titus's counsel was informed that he would be held to the next pretrial order date which was to be selected by him. Appellee's App. at 20. In light of these circumstances, Titus's counsel simply cannot claim that it is unfair to dismiss Titus's action because he did not understand that it was crucial to comply with the court's orders.

Indeed, if we *were* to consider the extra-record materials found in the appellee's appendix, an action which I suggest is proscribed by all precedents, this case would then be on "all fours" with the First Circuit's decision in *Zavala Santiago, supra,* an opinion which I have previously discussed in connection with the district court's obligation to consider lesser sanctions (*supra,* at 760–761).

### IV.

Judge Fullam's concurring opinion attacks the reasonableness, and indeed the very fact of the District of New Jersey's uniform pretrial notice. He characterizes the pretrial notice requirement as "elaborate, burdensome, and largely wasteful." (Fullam, J., Op., at 752). He finds fault with the requirements established by the District of New Jersey for discovery, for stipulations, for refining of issues, and as a tool for expediting trial calendars. In effect, he charges that these are " 'make-work' requirements which serve no valid case management goal." *Id.* at 752. He finds many features of the notice to be "facially invalid or highly questionable" and charges that the pretrial provisions rival the Internal Revenue Code in complexity. *Id.* at 753. He also finds that the District of New Jersey should not have imposed the burden of preparing the pretrial order on

the plaintiff's counsel, although he does not explain why the burden of initiating pretrial conferences or preparing the initial pretrial order should rest on others. He acknowledges that Titus's counsel should not be excused for performing inadequately at both the trial and appellate levels. In Judge Fullam's eyes, Titus's counsel erred only ("his chief error") by ineffectually attempting to comply with the notice, when "he should have resisted it, or sought relief from it." *Id.* at 754.

I do not propose to mount a defense on behalf of the district court judges of the District of New Jersey (who need no defense) but who, in their wisdom, promulgated in rule form the pretrial notice requirement. I note only that the pretrial notice in the form presented in this case was adopted by all the judges in the Newark vicinage, and has contributed substantially to a uniform procedure with which all counsel are familiar. Since November 1979, the date of its adoption, counsel can no longer be heard to complain that each judge and each magistrate has his own particular idiosyncratic pretrial requirement. Moreover, the pretrial notice adopted for use in the New Jersey federal courts follows closely the recommendations for pretrial notice and proceedings advocated in judicial seminars given by the Federal Judicial Center. *See generally Handbook For Effective Pretrial Procedure*, Adopted by the Judicial Conference of the United States, 37 F.R.D. 255 (1964). I therefore find nothing exceptional in the requirements which the District of New Jersey asks members of its Bar to meet.

Regardless of my feeling, however, I note that at no time since 1979 when the pretrial notice rule was adopted, has it ever been challenged as "facially invalid," "highly complex," "burdensome," "elaborate," "wasteful," or unconstitutional. Indeed, the plaintiff here has not so challenged it. That fact by itself is sufficient in my opinion to put this entire issue to rest. At no time, as Judge Fullam recognizes, did the plaintiff here complain that compliance with the order would exhaust him, or that he was unduly burdened, or that he was unable to comply with or understand the alleged complexities of the order. Instead, the plaintiff's attorney here flatly refused to comply with its requirements and with the court's orders implementing the pretrial notice.

Thus, with no challenge ever made to New Jersey's pretrial rule in general, or to the pretrial order in this case in particular, and with no complaints ever having been expressed about either the pretrial notice, the general pretrial practice, or the court's orders respecting both, and with no party ever having adverted to such an issue either before the district court or before us, I suggest that this is not the case in which to explore such an issue. Moreover, I believe it is highly inappropriate to reverse a district court, even by an alternative holding, where the basis of the reversal involves an issue never raised, presented to, briefed, or argued by any party at the trial level.

## V.

Judge Becker's opinion also holds that the district court should not have taken the action which it did "without adequately recording its reasons. . . ." (Becker, J., Op., at 751). As I read this record, the district court has set forth its reasons—and has done so more than adequately. I would suppose that even a lay person would be hard pressed to hold that the district court had failed to record its reasons for dismissing Titus's complaint, if the district court had prepared an opinion which essentially stated the following:

(1) On June 8, 1981, a date set for pretrial conference, counsel for the plaintiff was unprepared despite the pretrial notice previously given to him on March 11, 1981.

(2) Accordingly, a second pretrial conference was scheduled for September 10, 1981 and again the plaintiff appeared unprepared.

(3) Because it was essential that dates be fixed *for the completion of* discovery, a final pretrial conference was set for October 15, 1981. At that time I [the district court judge] informed counsel that a pretrial order in accordance with this court's pretrial notice must be presented for signature on that date.

(4) On October 15, 1981 plaintiff was again unprepared and no pretrial order was presented.

(5) On October 15, a final pretrial date was selected by plaintiff's attorney. He agreed to present a pretrial order on October 22, 1981 which would conform with the court's original pretrial notice.

(6) On October 22, 1981 the plaintiff still had failed to comply with the court's order and had failed to prosecute his case.

(7) Therefore, in my discretion, I dismiss the plaintiff's action *for failure to prosecute* and for his consistent failure to comply with each and all of the aforesaid orders.

Had such an opinion been written by the district court judge, I submit that it would be accepted as a more than adequate statement of the district court's reasons. Moreover, it could hardly be maintained that such an opinion did not contain the very reasons that the opinion of this court now remands for the district court to articulate.

Yet the magistrate's report which recites the identical events set forth above in the "hypothetical" district court opinion, is the very report which the district court judge adopted as its own. If this court, by its present mandate, is now requiring district court judges to do no more than rephrase or copy the contents of reports made by magistrates at the district courts' direction, then I suggest that we have substituted form for substance. No one reading the magistrate's report and the district court's order which adopted that report and recommendation, can have the slightest doubt as to the basis and the reasons for the district court's determination which resulted in the dismissal of Titus's complaint.

Thus, I cannot agree that in this case the district court judge did not adequately record his reasons for dismissing Titus's action.

## VI.

I do not regard this case as a difficult case. Had I been sitting as a district court judge, there is no question in my mind that the poor lawyering and lack of diligence, to say nothing of the discourtesy, exhibited by Titus's counsel to the court in ignoring established dates and deadlines, would have led me to dismiss Titus's complaint just as the district court did here. Nevertheless, although I could not and do not agree with a decision which would overturn the district court's order of dismissal, I can understand that others might well differ in their approach to the problem presented by Titus's failure to comply with the court's orders. But it is precisely in such a situation that the district court's decision should be left undisturbed. Although particular judges, if sitting at the trial level, might not have imposed the sanction the district court chose here, that is not the test by which a court of appeals reviews such district court judgments. The scope of our review is whether the district court abused *its* discretion. It is manifest to me that the district court, after learning of counsel's disregard of the court's orders on four separate occasions, acted appropriately in exercising its discretion, and when it did so, its reasons for dismissing Titus's action were more than adequately set forth. *Donnelly's* instruction is not to the contrary.

I respectfully dissent.