**Ronald L. MINDEK; Ben Mindek, Appellants**

v.

**Thomas G. RIGATTI; Harold Purdy; Mark Dorsey; Samuel J. Secreet; Mark Joyce; Michael Bowen; Michael Phillips; Lyman Bellaire, Mayor of McDonald Borough, Washington County, Commonwealth of Pennsylvania; Borough of McDonald, Washington County, Commonwealth of Pennsylvania; William Tohey; Bryan Barbour; Cecil Township, Washington County, Commonwealth of Pennsylvania; James Garove; James Horvath; Chartiers Township, Washington County, Commonwealth of Pennsylvania; June Lilley, District Justice, Managerial District 27–3–8 of the Commonwealth of Pennsylvania; Paul Pozonsky, District Justice, Magisterial District 27–3–6 of the Com-**

---

monwealth of Pennsylvania; John C. Pettit, District Attorney, Washington County, Commonwealth of Pennsylvania; Michael Fagella, Assistant District Attorney, Washington County, Commonwealth of Pennsylvania; Thomas D. Cladden, Judge, Washington County, Commonwealth of Pennsylvania.

No. 92–3040.

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit Rule 12(6) on May 1, 1992.

Decided May 29, 1992.

Ronald L. Mindek, pro se.

Ben Mindek, pro se.

Roger J. Ecker, Barbara A. Rizzo, Peacock, Keller, Yohe, Day & Ecker, Washington, Pa., for appellees Rigatti, Purdy, Dorsey, Secreet, and Borough of McDonald.

Peter J. Taylor, Murphy, Taylor & Trout, Pittsburgh, Pa., for appellee Barbour.

A. Taylor Williams, Supreme Court of Pennsylvania Administrative Office of Pa. Courts, Philadelphia, Pa., for appellees Lilley and Pozonsky.

Melvin B. Bassi, Bassi & Rega, Charleroi, Pa., for appellees Pettit and Fagella.

Before: BECKER, ALITO, and GARTH, Circuit Judges.

## OPINION OF THE COURT

GARTH, Circuit Judge:

For the second time in four years, and after the labors of a federal magistrate judge, two district court judges and four panels of this Court, we must once again consider the case of two plaintiffs who, virtually from the commencement of their suit four years ago, have continually flouted court orders and denigrated the authority of the magistrate judge to whom their case was assigned. Judicial resources are too valuable to be squandered on wasteful proceedings such as the Mindeks have instituted. We emphasize, therefore, that the dismissal of a complaint is an entirely appropriate response to deliberate defiance of court orders where the district court judge has properly determined that no other sanction would adequately ensure future compliance.

## I.

### A.

On January 28, 1988, Ronald and Ben Mindek brought a section 1983 suit in the Western District of Pennsylvania alleging that police officers had used excessive force and had performed an unconstitutional seizure of their tape-recorder in connection with the enforcement of an allegedly unconstitutional anti-loitering ordinance. The Mindeks brought suit not only against the officers who had allegedly used excessive force but also against other police officers, McDonald Borough, and various government officials, including two magistrates and a judge.

After initially dismissing claims against several of the defendants on June 3, 1988 as frivolous, the district court dismissed the entire complaint on June 11, 1988 because the Mindeks had refused to comply with the magistrate judge's order. The magistrate judge had directed the Mindeks to file an amended complaint which would detail their alleged injury in more specific terms. The Mindeks, asserting that orders of magistrate judges need not be obeyed, refused to do so.

On appeal to this Court, the Mindeks argued that the magistrate judge, not being an Article III judge, had no authority over their case. This argument was unanimously rejected by the entire panel. The panel then divided on the issue of the dismissal of the Mindeks' complaint. *See Mindek v. Rigatti*, 877 F.2d 56 (3d Cir. 1989) (unpublished opinion). The majority of the panel identified those claims of the Mindeks which had stated a cause of action and determined that the Mindeks' failure to file an amended complaint regarding those claims, as per the magistrate judge's instructions, may have resulted from the Mindeks' ignorance and confusion regarding the role of federal magistrate. The majority therefore outlined for the Mindeks the validity and statutory basis for the magistrate judge's involvement, and then remanded the case to the district court for entry of an order permitting the Mindeks to file an amended complaint as respects the few claims which ostensibly stated a cause of action. The majority also directed the district court to allow the Mindeks to join additional defendants only with respect to the tape-recorder seizure claim.

The dissent criticized the majority's indulgence of the Mindeks' behavior and contended that dismissal had been entirely appropriate in light of the Mindeks' obdurate refusal to obey court orders. The dissent asserted that

> [t]he plaintiffs had their opportunity to set forth their claims as to excessive force and to do it with specificity, as the district court properly required, and they refused to do so. Rather, as I have noted, they raised issues as to magisterial jurisdiction and other nonsubstantive issues, all of which ignored the district court's directions, and, as the majority opinion points out, were meritless. I do not believe that litigants can play that fast and loose with court processes. When a district court requires an action to be taken in order to preserve a right, it seems to me that even a *pro se* litigant must comply with that direction. Because these *pro se* litigants did not, I would affirm the district court's action in dismissing the complaints for excessive force against Officers Rigatti, Purdy and Barber.

*Id.* The dissent also predicted that the Mindeks' obstinance would once again require the district court to dismiss their complaint. Noting that, in an unrelated case, a reversal of a district court's dismissal of a recalcitrant plaintiff's complaint, *see Titus v. Mercedes Benz of North America*, 695 F.2d 746 (3d Cir.1982), had led to a second dismissal of the complaint by the district court and an affirmance of that second dismissal on appeal, *see Titus v. Mercedes Benz of North America*, 723 F.2d 898 (3d Cir.1983), the dissent urged that "I see no reason why, having marched the king's horses up the hill so that we could march them back down again in *Titus*, this court should repeat the same exercise here." *Id.*

### B.

On July 25, 1989, the Mindeks filed an amended complaint in the district court,

joining additional defendants and raising new claims. On June 26, 1990, the district court adopted the magistrate judge's recommendation to dismiss all newly added claims and parties that did not fall within the scope of the Mindeks' limited right to amend as prescribed in our earlier opinion. The district court also adopted the magistrate judge's recommendation to dismiss frivolous new claims, relating to the seizure of the tape-recorder, against Cecil Township and the Mayor of McDonald Borough.

On October 9, 1990, the magistrate judge directed the Mindeks to file a pretrial narrative statement on or before December 1, 1990. The Mindeks failed to comply with the magistrate judge's request because, once again, they refused to recognize the magistrate judge's authority. Instead, they filed a series of frivolous motions, including a "Motion and Demand for Plaintiffs to be Afforded Opportunity to File a Response to Defendant's Answer and to Complete Discovery," a "Motion for Protective Order and for Default," and a "Motion to Strike Insufficient Defenses."

On December 10, 1990, the magistrate judge notified the Mindeks by letter that they had failed to file a Pre–Trial Narrative Statement, as per the October 9, 1990 order. The Mindeks were advised that their failure to cure this delinquency by December 20, 1990 could result in the imposition of sanctions.

Rather than complying with this pre-trial directive, the Mindeks filed still another frivolous motion requesting the entry of a default judgment against the defendants. By letter dated January 8, 1991, the magistrate judge once again notified the Mindeks that they were delinquent in filing a Pretrial Narrative Statement. The Mindeks were once again advised that their failure to comply with the court's order by January 18, 1991 could result in the imposition of sanctions.

The Mindeks appealed the magistrate judge's denial of their motions to the district court. On January 15, 1991, the district court affirmed the denial of their motions. On January 28, 1991, the Mindeks appealed to this Court from the district court's order. That appeal was dismissed for lack of appellate jurisdiction. *See Mindek v. Rigatti*, No. 91–3067 (3d Cir. April 11, 1991). On May 8, 1991, the Mindeks filed a Petition to this Court for Writ of Mandamus and/or Prohibition, referencing the Mindeks' objections to the role of the magistrate judge as well as the actions of the district court. We denied the Mindeks' petition. *See Mindek v. Rigatti*, No. 91–8040 (3d Cir. July 31, 1991).

On May 22, 1991, the magistrate judge directed the Mindeks to show cause, within ten days, why they should not be sanctioned for refusal to obey court orders. The Mindeks requested an extension of time to respond, and the magistrate judge promptly afforded them an additional thirty days. Instead of responding within the allotted 30 days, however, the Mindeks filed another motion with the district court, seeking review of the magistrate judge's May 22, 1991 order. In response, the district court issued an order requiring the remaining defendants to respond to the Mindeks' appeal on or before June 18, 1991. The defendants responded by moving to quash the appeal. The district court then directed the Mindeks to file a response to the defendants' Motion to Quash the Appeal. They did not. Rather, they requested an extension of time within which to respond. The district court granted their request by advancing the deadline from July 1, 1991 to July 31, 1991. On July 31, 1991, the Mindeks, rather than answering the motion of the defendants, once again challenged the role of the magistrate in conducting these proceedings.

On October 9, 1991, the magistrate judge issued yet another order directing the Mindeks to file a Pre–Trial Narrative Statement by October 19, 1991. The Mindeks were again notified that their failure to comply with that order could result in the imposition of sanctions. In response, the Mindeks filed another objection to the jurisdiction of the magistrate judge, which was denied. The magistrate judge then ordered the Mindeks to show cause why the court should not impose sanctions or dismiss the

complaint. Again, the Mindeks objected to this order and argued that the magistrate judge had no jurisdiction to act in this case.

On November 22, 1991, the magistrate judge, finding that no lesser sanction was appropriate and that dismissal was warranted under *Poulis v. State Farm Fire and Casualty Co.*, 747 F.2d 863 (3d Cir. 1984), issued a Report and Recommendation recommending that the Mindeks' complaint be dismissed. The magistrate judge advised all parties that they had ten days from that date to file objections to his Report and Recommendation. On December 2, 1991, the Mindeks filed an objection, once again challenging the magistrate judge's authority to act in this case. At that time, the Mindeks also moved for leave to amend and supplement their complaint.

On January 6, 1992, approximately four years after the initiation of this case and more than two and one half years after remand, the district court judge adopted the magistrate judge's Report and Recommendation and dismissed the Mindeks' complaint.

## II.

### A.

District court judges, confronted with litigants who flagrantly violate or ignore court orders, often have no appropriate or efficacious recourse other than dismissal of the complaint with prejudice. The Federal Rules of Civil Procedure and the United States Supreme Court have recognized and provided for this practice. *See Link v. Wabash Railroad*, 370 U.S. 626, 629, 82 S.Ct. 1386, 1388, 8 L.Ed.2d 734 (1962); Fed. R.Civ.P. 16(f), 37(b)(2), 41(b). The present case exemplifies the very kind of situation that warrants dismissal.

■ In this circuit, we have held that district court judges should determine the

propriety of punitive dismissals in light of the factors outlined in *Poulis v. State Farm Fire and Casualty Co.*, 747 F.2d 863 (3d Cir.1984).[1] However, *Poulis* did not provide a magic formula whereby the decision to dismiss or not to dismiss a plaintiff's complaint becomes a mechanical calculation easily reviewed by this Court. As we have already recognized, not all of the *Poulis* factors need be satisfied in order to dismiss a complaint. *See C.T. Bedwell & Sons, Inc. v. Int'l. Fidelity Ins. Co.*, 843 F.2d 683, 696 (3d Cir.1988). Instead, the decision must be made in the context of the district court's extended contact with the litigant. Ultimately, the decision to dismiss constitutes an exercise of the district court judge's discretion and must be given great deference by this Court—a court which has had no direct contact with the litigants and whose orders, calendar, docket and authority have not been violated or disrupted.

■ Although we have held that "[d]ismissal is a harsh remedy and should be resorted to only in extreme cases," we nevertheless have recognized that "the scope of appellate review of an order of dismissal is extremely narrow, confined solely to whether the trial court has abused its discretion." *Marshall v. Sielaff*, 492 F.2d 917 (3d Cir.1974). *See also C.T. Bedwell*, 843 F.2d at 691; *Titus v. Mercedes Benz of North America*, 695 F.2d at 757, 761 (Garth, J. dissenting). Perhaps some judges, for reasons which we could not comprehend, would not have dismissed the Mindeks' complaint had those judges themselves sat at the trial level. But that potential difference in trial management approach demonstrates, rather than obviates, the need to leave such decisions within the discretion of the district court judge. The scope of *our* review is restricted to determining whether the district court abused *its* discretion. How we imagine we might have exercised our own discretion had we

---

**1.** The six factors identified in *Poulis* are:
(1) the extent of the party's personal responsibility; (2) the prejudice to the adversary caused by the failure to meet scheduling orders and respond to discovery; (3) a history of dilatoriness; (4) whether the conduct of the party or the attorney was willful or in bad faith; (5) the effectiveness of sanctions other than dismissal, which entails an analysis of alternative sanctions; and (6) the meritoriousness of the claim or defense.
747 F.2d at 868.

been in the district court judge's robe is entirely irrelevant.

The United States Supreme Court has recognized the importance of leaving the decision to dismiss firmly within the discretion of the district court judge. In *National Hockey League v. Metropolitan Hockey Club, Inc.*, 427 U.S. 639, 96 S.Ct. 2778, 49 L.Ed.2d 747 (1975), the Supreme Court reversed a decision of this Court after we had reversed a district court judge's dismissal of a unmanageable plaintiff's complaint. The Supreme Court explained that

> [t]he question, of course, is not whether this Court, or whether the Court of Appeals, would as an original matter have dismissed the action; it is whether the District Court abused its discretion in so doing.
>
> There is a natural tendency on the part of reviewing courts, properly employing the benefit of hindsight, to be heavily influenced by the severity of outright dismissal as a sanction for failure to comply with a discovery order. It is quite reasonable to conclude that a party who has been subjected to such an order will feel duly chastened, so that even though he succeeds in having the order reversed on appeal he will nonetheless comply promptly with future discovery orders of the district court.
>
> But here, as in other areas of the law, the most severe in the spectrum of sanctions provided by statute or rule must be available to the district court in appropriate cases, not merely to penalize those whose conduct may be deemed to warrant such a sanction, but to deter those

who might be tempted to such conduct in the absence of such a deterrent.

*Id.* at 642–43, 96 S.Ct. at 2780–81.

## B.

■ We cannot even hope to quantify the extent to which cases such as the one before us clog our judicial system and interfere with the ability of diligent litigants to obtain prompt judicial resolution of their disputes. To overcome that interference, we must discipline ourselves not to engage in Monday-morning-quarterbacking which second-guesses conscientious district court judges. It is the district court judge who must strive to manage his or her calendar efficiently and, in so doing, may find it necessary to dismiss a litigant's complaint as a sanction for repeated failure to satisfy court orders.

To tolerate the delays caused by the Mindeks, or to equivocate over lesser sanctions, would make a mockery of the very objectives of the "civil justice expense and delay reduction plans" which the district courts have developed and implemented pursuant to the Civil Justice Reform Act of 1990, 28 U.S.C. 471 *et seq* (supp. 1991). Congress enacted the Civil Justice Reform Act of 1990 after having found that unnecessary costs and delays in the federal judicial system had seriously decreased access to the courts and that "solutions to problems of cost and delay must include significant contributions by the courts, the litigants, the litigants' attorneys, and by the Congress and the executive branch." Pub.L. No. 101–650 § 102(3), 104 Stat. 5089 (1990) (finding #3).[2] The district court

---

**2.** As here relevant, Congress made the following findings:

> (1) The problems of cost and delay in civil litigation in any United States district court must be addressed in the context of the full range of demands made on the district court's resources by both civil and criminal matters.
>
> (2) The courts, the litigants, the litigants' attorneys, and the Congress and the executive branch, share responsibility for cost and delay in civil litigation and its impact on access to the courts, adjudication of cases on the merits, and the ability of the civil justice system to provide proper and timely judicial relief for aggrieved parties.

> (3) The solutions to problems of cost and delay must include significant contributions by the courts, the litigants, the litigants' attorneys, and by the Congress and the executive branch.
>
> &ast; &ast; &ast; &ast; &ast; &ast;
>
> (6) Because the increasing volume and complexity of civil and criminal cases imposes increasingly heavy workload burdens on judicial officers, clerks of court, and other court personnel, it is necessary to create an effective administrative structure to ensure ongoing consultation and communication regarding effective litigation management and cost and delay reduction principles and techniques.

plans, which require review by the chief judges of the relevant district and circuit courts and by the Judicial Conference of the United States, *see* 28 U.S.C. § 474, are designed to proscribe delay and to reduce expense by encouraging early judicial intervention and efficient judicial management of litigation. *See* 28 U.S.C. § 473.

Although the Mindeks filed their complaints before the Civil Justice Reform Act became law, they have engaged in the types of practices sought to be corrected by that Act's passage. Especially now, after Congress has expressed its dissatisfaction with the delay and costs that have hampered the federal judicial system, we in the Court of Appeals should not add to the burdens of the district courts by suffering the behavior of litigants who, like the Mindeks, refuse to abide by prescribed rules of court. The district courts cannot, and should not, tolerate unjustifiable delays and the expenditure of irreplaceable judicial resources caused by litigants, *pro-se* or represented, who will not obey court orders. Nor will we.

We observe that the district court chose not to impose monetary sanctions against the Mindeks, apparently because the magistrate judge had deemed such sanctions inappropriate in light of the Mindeks' *in forma pauperis* status. This decision not to impose monetary sanctions, like the decision to dismiss the Mindeks' complaint, falls squarely within the district court's discretion and, once again, requires our deference.

### III.

We will affirm the order of the District Court dismissing the Mindeks' complaint. Costs are to be taxed against the Mindeks.

Pub.L. No. 101–650 § 102(3), 104 Stat. 5089     (1990).