**Dermot Patrick CARROLL, Plaintiff,**

v.

**Leonard C. JAQUES and The Jaques Admiralty Law Firm, P.C., Defendants.**

No. 1:95 CV 87.

United States District Court,
E.D. Texas,
Beaumont Division.

May 21, 1996.

Joseph Charles Blanks, Law Offices of Joseph C. Blanks, Beaumont, TX, for Plaintiff.

Curry Lynn Cooksey of Orgain, Bell & Tucker, Beaumont, TX, Richard N. Moore, Diane M. Guariglia, David Owen Cluck, of Lorance & Thompson PC, Houston, TX, for Defendants.

## ORDER IMPOSING SANCTIONS
## ON LEONARD C. JAQUES

SCHELL, Chief Judge.

On April 24, 1996, the court held a show cause hearing to determine whether Defendant Leonard C. Jaques ("Jaques") should be sanctioned for his abusive behavior at his deposition. After considering all facts surrounding Jaques's deposition, arguments of counsel, and Jaques's statement at the show cause hearing, the court is of the opinion that Jaques should be fined in the amount of $7,000 for his abusive behavior at his deposition.

### BACKGROUND

*Notice That Sanctions May Be Imposed*

On April 1, 1996, the court signed an Order to Show Cause that stated:

Pursuant to Rule 3 of the Local Court Rules of the Eastern District of Texas, Rule 37 of the Federal Rules of Civil Procedure, 28 U.S.C. § 1927, this court's inherent power to regulate a party's conduct in a case before it, and any other applicable source of sanctioning power, Defendant, LEONARD C. JAQUES is hereby ORDERED to appear and show cause as to why sanctions should not be ordered against him for his behavior and failure to answer questions at his deposition that occurred in this case on February 1, 1996. This show cause hearing is hereby scheduled for APRIL 24, 1996 at 9:00 a.m. All counsel of record who attended the deposition are ORDERED to appear at the show cause hearing. Counsel for Defendants are ORDERED to provide the court a complete copy of Mr. Jaques's deposition (transcript and video) at least five days before the hearing. Counsel for Plaintiff is ORDERED to provide the court with an affidavit stating all fees and expenses incurred, if any, on account of Mr. Jaques's behavior and failure to answer questions at his deposition.

At the show cause hearing, the court informed the parties that Jaques's refusal to answer questions and abusive behavior would be governed by Rule 37(a)(4) and the court's inherent power, respectively. Because Jaques's deposition was given by him in his capacity as a party in this action, the court did not conduct the hearing under Rule 3 of the Local Court Rules of the Eastern District of Texas (relating to disciplining or disbarring a member of the Eastern District's Bar) or 28 U.S.C. § 1927 (relating to shifting expenses and fees for an attorney's vexatious litigation practices). At a later time, however, the court may proceed under Rule 3 of the Local Court Rules of the Eastern District of Texas because Jaques is an attorney and has been a member of the Eastern District's Bar since February 4, 1981.

*Procedural Background*

It is necessary to place Jaques's behavior in context and demonstrate the necessity for the court to draw on its inherent power. On October 5, 1994, Plaintiff, Dermot Patrick Carroll ("Carroll"), filed this action in the 172nd Judicial District Court of Jefferson County, Texas. Carroll alleged that Defendants, Leonard C. Jaques and The Jaques Admiralty Law Firm, P.C., committed malpractice under the theories of negligence, gross negligence, fraud, breach of contract, and deceptive trade practices. On February 17, 1995, Defendants removed the action to this court.

On September 15, 1995, this court dismissed Carroll's legal malpractice claims and Texas Deceptive Trade Practices Act claim because those claims were barred by the statute of limitations. Carroll's breach of contract claims also were dismissed on limitations grounds because "attorney malpractice claims sound in tort regardless of whether they are framed as tort or contract actions." *American Medical Elecs. v. Korn*, 819 S.W.2d 573, 576 (Tex.App.—Dallas 1991, writ denied) (relying on *Willis v. Maverick*, 760 S.W.2d 642, 644 (Tex.1988)). Only Carroll's fraud claim remained in this action for trial.

On September 8, 1995, the court referred the case for mediation before an attorney mediator pursuant to Rule 16(c)(9) of the Federal Rules of Civil Procedure and Article Six section (7) of the Eastern District's Civil Justice Expense and Delay Reduction Plan. This order provided: "Named parties

shall be present during the entire mediation process and each corporate or government party must be represented by an executive officer with authority to negotiate a settlement." On September 25, 1995, the court referred the mediation to a United States Magistrate Judge (the "Magistrate Judge") pursuant to a joint motion by the parties: Also on September 25, 1995, the Magistrate Judge set the mediation for October 24, 1995 and ordered that "[a]ll parties shall attend and participate in said mediation, including any individual, representative and/or corporate officers, as may be necessary to ensure full authority to negotiate and bind said entities...." On November 29, 1995, the Magistrate Judge reset the mediation for December 19, 1995, and he again ordered the parties to attend the mediation. On December 13, 1995, the Magistrate Judge continued the mediation to January 19, 1996.

On January 19, 1996, the Magistrate Judge conducted a mediation in this case. Notably, neither Leonard C. Jaques nor a corporate representative of The Jaques Admiralty Law Firm, P.C. attended the mediation. This failure to attend was violative of (1) this court's and the Magistrate Judge's specific orders requiring party attendance at mediation and (2) section (e)(3) of the Eastern District's C.J.R.A. Court Annexed Mediation Plan. On January 23, 1996, the court ordered Leonard C. Jaques and The Jaques Admiralty Law Firm, P.C. to show cause as to why sanctions should not be imposed against them for their failure to attend the mediation.

On February 1, 1996, the court conducted the show cause hearing and signed an order that stated:

> After holding a hearing on February 1, 1996 as to why sanctions should not be ordered against LEONARD C. JAQUES and THE JAQUES ADMIRALTY LAW FIRM, P.C. (collectively "Jaques") for failure to appear at the court ordered mediation that occurred on January 19, 1996, the court determines that it will not sanction Jaques. Under Federal Rule of Civil Procedure 16(f), the court finds that there are circumstances that would make an award of expenses and attorney's fees unjust.
>
> At the hearing, the court also considered Plaintiff's Motion to Strike or Quash Deposition of Leonard C. Jaques. Because the parties have agreed to conduct Mr. Jaques's deposition on February 1, 1996, Plaintiff's motion is MOOT.

The court's reason for finding "that there are circumstances that would make an award of expenses and attorney's fees unjust" was that the Plaintiff did not incur any additional attorney's fees or expenses for Jaques's failure to appear for the mediation. Show Cause Hr'g Tr. at 26.

*The Jaques Deposition*

On February 1, 1996, counsel for Plaintiff conducted the deposition of Leonard Jaques. Over the course of the deposition, Jaques refused to answer questions and verbally abused counsel for Plaintiff with profanity. After a barrage of profanity by Jaques, counsel for Plaintiff terminated the deposition. The court regrets having to repeat Jaques's profanity in this opinion, but the court must explain the necessity for drawing on its inherent power to control a party's conduct in a case before the court. Although the court ultimately sanctions Jaques for particular profane words, it is important to put the words in a "question and answer" context so that the transcript fairly represents Jaques's contumacious behavior at the deposition. As referenced in the deposition transcript, Plaintiff's counsel is questioning Jaques ("THE WITNESS"), and Defendants' counsel represents Jaques. While the transcript contains many other instances of Jaques's abusive behavior, the court will repeat only a portion. The deposition transcript reads:

[PLAINTIFF'S COUNSEL]: Do you want to make your objection now?

[DEFENDANTS' COUNSEL]: Please. I object to the form of the question, and it is argumentative and calls for a legal conclusion from the witness. Let me take a short break.

THE WITNESS: More than that, it's not relevant to any issue of this cause. I mean

it is stupid. It is out of order. *Only an ass would ask those questions.*

[p. 114, line 2 to line 12]

\* \* \*

Q. Well, do you think you wrote Mr. Carroll a letter and told him that the judge had dismissed his case on Forum on Nonconvenience [sic] in 1982?

A. I'm not thinking.

[DEFENDANTS' COUNSEL]: Excuse me. Excuse me. Excuse me. This is repetitious. He's already told you that he doesn't recall.

A. Let him go on. Just let him go on. *He's an idiot.* Let him go on.

[p. 177, line 24 to p. 178, line 8]

\* \* \*

Q. So, this is the document that constitutes your authority? I mean you would be wrong to go file suit for a man or to do something for him if you didn't have the authority to represent him under your state laws and, I assume. That would be s [sic] right?

A. Well, you took ethics, too. And is that your understanding of legal ethics?

Q. Are you telling me that I'm right?

A. *I'm telling you you're an ass to ask me such a question.*

[p. 185, line 17 to p. 186, line 2]

\* \* \*

Q. And the place to look for the answer if there is one would be again in the firm's file?

[DEFENDANTS' COUNSEL]: Excuse me.

(By [Plaintiff's counsel])

Q. Correct?

[DEFENDANTS' COUNSEL]: I object to form of the question, misleading, assumes facts not in evidence.

A. *Isn't that an asinine question?*

Q. We would have to look in the file, wouldn't we? There is no place else that you would look for it, is there?

[DEFENDANTS' COUNSEL]: Nonresponsive.

A. *Isn't that an asinine question?*

[p. 202, line 22 to p. 203, line 11]

\* \* \*

Q. So, you knew you had Mr. Carroll's file in the—

A. (Interrupting) *Where the fuck is this idiot going?*

Q. —winter of 1990/91 or you didn't?

[DEFENDANTS' COUNSEL]: Nonresponsive. Objection, objection this is harassing. This is ...

THE WITNESS: He's harassing me. *He ought to be punched in the goddamn nose.*

[p. 208, line 11 to line 19]

\* \* \*

Q. How about your own net worth, Mr. Jaques? What is that?

[DEFENDANTS' COUNSEL]: Excuse me. Object also that this is protected by a—

THE WITNESS: (Interrupting) *Get off my back, you slimy son-of-a-bitch.*

[PLAINTIFF'S COUNSEL]: I beg your pardon, sir?

THE WITNESS: *You slimy son-of-a-bitch.* [Shouting.]

[PLAINTIFF'S COUNSEL]: You're not going to cuss me, Mr. Jaques.

THE WITNESS: *You're a slimy son-of-a-bitch.* [Shouting.]

[PLAINTIFF'S COUNSEL]: You can cuss your counsel. You can cuss your client. You can cuss yourself. You're not going to cuss me. We're stopping right now.

THE WITNESS: You're damn right.

[PLAINTIFF'S COUNSEL]: We'll resume with Judge Schell tomorrow. Thank you.

THE WITNESS: Come on. Let's go.

[PLAINTIFF'S COUNSEL]: Good evening, sir.

THE WITNESS: *Fuck you, you son-of-a-bitch.*

[p. 214, line 17 to p. 215, line 14]

Jaques Depo.Tr. dated Feb. 1, 1996 (emphasis added). Considering Jaques's shocking and uncivilized conduct at his deposition,

counsel for both parties are to be commended for the way they conducted themselves under such difficult circumstances.

In addition to the profanity, Jaques refused to answer or gave an evasive or incomplete answer to questions propounded by Plaintiff's counsel. Jaques refused to answer questions about the following five matters: (1) his estimate of the value of Carroll's case in 1982 (Jaques Depo. at 158–59); (2) his opinion on a letter from Carroll and any response in Jaques's file (Jaques Depo. at 198–99; 202–03); (3) the circumstances surrounding Gary Baun's separation from Jaques's firm and subsequent litigation between Jaques and Baun (Jaques Depo. at 204–05); (4) ownership of Jaques's law firm (Jaques Depo. at 210–12); and (5) Jaques's personal net worth (Jaques Depo. at 214–15).

On February 5, 1996, Plaintiff filed a motion to compel Jaques to answer questions and refrain from verbal abuse. Defendants responded to the motion to compel, arguing that counsel for Plaintiff was questioning Jaques about irrelevant issues. With respect to the abusive behavior, Jaques explained that such behavior was precipitated by "obvious harassment of the witness and, coupled with his extreme fatigue, his hypoglycemic condition, and the harassing irrelevant questions by the Plaintiff's counsel." Defs.' Resp. to Plt's. Mot. to Compel 2. The court ruled:

> The court finds that discovery as to some of these matters may be relevant to issues in this case. The court ruled on February 8, 1996 that the law of Michigan will apply to this case. Under the law of Michigan, punitive damages are not available to punish a defendant, and a plaintiff is not permitted discovery on a defendant's net worth. Thus, Jaques is no longer required to respond to questions concerning his net worth or that of his law firm.
>
> Jaques, however, is required to answer any and all questions that relate to relevant issues remaining in this case including, but not limited to, questions pertaining to (1) the underlying case of Mr. Carroll against Sedco, et al. (including questions about the financial records pertaining to Mr. Carroll's case against Sedco), (2) the circumstances surrounding the departure of Gary Baun from the Jaques Admiralty Law Firm, and (3) the percentage of ownership of Jaques and Baun in the Jaques Admiralty Law Firm.
>
> Counsel for both sides have today announced their agreement to the court that in lieu of continuing the oral deposition of Mr. Jaques, counsel for the Plaintiff will deliver to counsel for Defendants written interrogatories directed to Mr. Jaques. Therefore, this court ORDERS Jaques to answer these interrogatories as expeditiously as possible and in no event later than Thursday, February 15, 1996. Jaques and his counsel are also reminded of their duty of disclosure under the Eastern District's plan with respect to any documentary evidence that bears significantly on the claims or defenses in this action. If Jaques refuses to answer interrogatories or disclose documents concerning facts relevant to this action, he will be subject to sanctions available under Federal Rules of Civil Procedure 16(f) and 37(b)(2), including, but not limited to, a judgment by default against Defendant Jaques and/or the Jaques Admiralty Law Firm.
>
> The court will take up the matter of Jaques's behavior at the February 1st deposition at a later date. For now, Jaques is admonished to cease his abusive behavior toward Plaintiff's counsel.

Order on Plt's. Mot. to Compel dated Feb. 12, 1996.

On February 12, 1996, this court empaneled a jury in this diversity action. On February 20, 1996, this action came on for trial before a jury. On February 27, 1996, the jury returned a verdict finding that Leonard C. Jaques and The Jaques Admiralty Law Firm, P.C. committed fraud upon Dermot Carroll. The jury awarded Carroll damages in the amount of $5,000,000 ($1,500,000 in actual damages and $3,500,000 in exemplary damages). On March 4, 1996, a judgment in the amount of $5,563,545.51 (including prejudgment interest) was entered against the Defendants.

## DISCUSSION

*Rule 37 of the Federal Rules of Civil Procedure*

Rule 37 provides:

(a) Motion For Order Compelling Disclosure or Discovery. A party, upon reasonable notice to other parties and all persons affected thereby, may apply for an order compelling disclosure or discovery as follows:

\* \* \* \* \* \*

(2) Motion.

\* \* \* \* \* \*

(B) If a deponent fails to answer a question propounded or submitted under Rules 30 [providing for oral deposition of a party] or 31 ... the discovering party may move for an order compelling an answer. When taking a deposition on oral examination, the proponent of the question may complete or adjourn the examination before applying for an order.

(3) Evasive or Incomplete Disclosure, Answer, or Response. For purposes of this subdivision an evasive or incomplete disclosure, answer, or response is to be treated as a failure to disclose, answer, or respond.

(4) Expenses and Sanctions.

(A) If the motion is granted or if the disclosure or requested discovery is provided after the motion was filed, the court shall, after affording an opportunity to be heard, require the party or deponent whose conduct necessitated the motion or the party or attorney advising such conduct or both of them to pay the moving party the reasonable expenses incurred in making the motion, including attorney's fees, unless the court finds that the motion was filed without the movant's first making a good faith effort to obtain the disclosure or discovery without court action, or that the opposing party's nondisclosure, response, or objection was substantially justified, or that other circumstances make an award of expenses unjust.

FED.R.CIV. P. 37(a).

■ Under Article Six section (6) of the Eastern District's Civil Justice Expense and Delay Reduction Plan, "[a]ttorneys are prohibited from instructing the deponent not to answer a question or how to answer a question, except to assert a recognized privilege."

Thus, Jaques was under a duty to respond fully to all questions unless he asserted a recognized privilege. Jaques's counsel attempted to assert a privilege in two instances of questioning: (1) the circumstances surrounding Gary Baun's separation from Jaques's firm and subsequent litigation with Jaques (Jaques Depo. at 204) and (2) Jaques's personal net worth (Jaques Depo. at 214–15). It is unclear, however, from the transcript what recognized privileges were asserted.

■ Under Rule 37(a)(4), because the court granted Plaintiff's motion to compel, the court is required to order Jaques to pay Plaintiff's reasonable expenses and fees incurred in making the motion unless one of the rule's exceptions applies. The court finds, however, that it is not in a position to award fees to Plaintiff. Specifically, counsel for Plaintiff declined to prepare an affidavit of the expenses and attorney's fees incurred in filing the motion to compel. At the hearing, counsel for Plaintiff stated to the court that the Plaintiff would not seek a few hundred dollars in compensation for Jaques's refusal to answer. Counsel for Plaintiff reasoned that seeking such a small amount of compensation would trivialize Jaques's abusive behavior that disrupted the litigation process. Accordingly, the court will not sanction Jaques under Rule 37(a)(4)(A).

*Court's Inherent Power to Regulate a Party's Conduct in a Case Before the Court*

■ Federal courts have undisputed, inherent power to regulate practice in cases pending before them. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43, 111 S.Ct. 2123, 2132, 115 L.Ed.2d 27 (1991). This power originates from " 'the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.' " *Natural Gas Pipeline v. Energy Gathering, Inc.*, 2 F.3d 1397, 1406 (5th Cir.1993) (quoting *Link v. Wabash R. Co.*, 370 U.S. 626, 630, 82 S.Ct. 1386, 1389, 8 L.Ed.2d 734 (1962)), *cert. denied*, 510 U.S. 1073, 114 S.Ct. 882, 127 L.Ed.2d 77 (1994). In exercising this power, a court can sanction a party for abuse of judicial processes. *See*

*Chambers,* 501 U.S. at 43–44, 111 S.Ct. at 2132–33. To sanction a party, the court must make a specific finding that the sanction is in response to (1) the willful disobedience of a court order or (2) actions taken in bad faith, vexatiously, wantonly, or for oppressive reasons. *See id.* at 44–45, 111 S.Ct. at 2133; *Dawson v. United States,* 68 F.3d 886, 895 (5th Cir.1995). "[A] party 'shows bad faith by delaying or disrupting the litigation or by hampering enforcement of a court order.'" *Chambers,* 501 U.S. at 44–45, 111 S.Ct. at 2133 (quoting *Hutto v. Finney,* 437 U.S. 678, 689, n. 14, 98 S.Ct. 2565, 2573 n. 14, 57 L.Ed.2d 522 (1978)). Sanctions pursuant to a court's inherent authority serve the "dual purpose of 'vindicat[ing] judicial authority without resort to the more drastic sanctions available for contempt of court and mak[ing] the prevailing party whole for expenses caused by his opponent's obstinacy.'" *Id.* at 44–45, 111 S.Ct. at 2133.

 "A court must, of course, exercise caution in invoking its inherent power, and it must comply with the mandates of due process, both in determining that the requisite bad faith exists and in assessing fees." *Chambers,* 501 U.S. at 50, 111 S.Ct. at 2136 (citations omitted). "[W]hen there is bad-faith conduct in the course of litigation that could be adequately sanctioned under the Rules, the court ordinarily should rely on the Rules rather than the inherent power. But if in the informed discretion of the court, neither the statute nor the Rules are up to the task, the court may safely rely on its inherent power." *Id.* at 50, 111 S.Ct. at 2136; *Natural Gas Pipeline Co.,* 2 F.3d at 1411 ("The inherent power to sanction bad faith conduct must extend to reach individuals and conduct not directly addressed by other mechanisms."). "As long as a party receives an appropriate hearing ... the party may be sanctioned for abuses of process occurring beyond the courtroom, such as disobeying the court's orders." *Chambers,* 501 U.S. at 57, 111 S.Ct. at 2139.

Because there are no adequate bases for sanctions of Jaques under any statute or the Federal Rules of Civil Procedure, it is necessary to resort to the court's inherent power to sanction Jaques. For example, under the criminal contempt statute, the court cannot sanction Jaques for his abusive behavior because Jaques's misconduct was not in the court's "presence or so near thereto as to obstruct the administration of justice." 18 U.S.C. § 401; *see also in re Stewart,* 571 F.2d 958, 966 (5th Cir.1978) ("The words 'so near thereto' are meant as geographic terms that limit the subsection's application to acts within the immediate vicinity of the courtroom, such as the adjoining hallway or the jury room."); *Schleper v. Ford Motor Co.,* 585 F.2d 1367, 1370–71 (8th Cir.1978) (use of profane and obscene language in answers to written interrogatories was not in presence of the court).

*Court's Specific Finding of Bad Faith*

 The court finds that Jaques's behavior at his deposition on February 1, 1996 constitutes bad faith. Jaques disrupted this litigation with his abusive behavior at his deposition. Jaques hurled vulgar and profane words at counsel for the Plaintiff, and, in one instance, appeared to threaten counsel for the Plaintiff with an act of physical violence. According to the video of the deposition, Jaques, at one point, was shouting his profanities. This abusive behavior disrupted the litigation (1) by forcing counsel for the Plaintiff to terminate the deposition and (2) by displaying blatant disrespect and contempt for the judicial processes of this court. Jaques's language was extremely offensive, threatening, and contumacious. No court can effectively dispose of cases when a party engages in such repugnant conduct in the course of pretrial discovery.

The court is mindful of Jaques's claim that his behavior was precipitated by "obvious harassment of the witness and, coupled with his extreme fatigue, his hypoglycemic condition, and the harassing irrelevant questions by the Plaintiff's counsel...." Defs.' Resp. to Plt's. Mot. to Compel 2. If Jaques's reference to "harassment" relates to repeated questioning by counsel for Plaintiff, Jaques's own refusal to answer questions at the deposition necessitated some repeated questioning. With respect to "extreme fatigue," the late hour of his deposition was due in part to his failure to attend the deposition that was previously set for him. Jaques's deposition

on February 1, 1996 was scheduled primarily for Jaques's convenience so that he would not have to travel from Michigan to Texas on another day. Moreover, Jaques's claim of "extreme fatigue" during the deposition is dubious because during the deposition Jaques also said, at one point, that he was not tired and that he "would be pleased to go all the way to midnight." Jaques Depo. at p. 133, lines 20–25 to p. 134, lines 1–3; p. 137, lines 3–4. Counsel for the Plaintiff even offered to continue the deposition to a later date. Jaques Depo. at p. 130, lines 11–15. With respect to the "hypoglycemic condition," Jaques did not raise this concern during his deposition, and such a condition does not excuse such outrageous behavior by a party. Even assuming, as Jaques's doctor suggests in his affidavit, that a hypoglycemic condition causes mood swings that are triggered by stress and lack of nutritional sustenance, Jaques is solely responsible for monitoring and controlling his health condition. Jaques could have requested a break in the deposition to obtain a snack or some medication for his medical condition.

When Jaques proffers excuses, mitigating circumstances, and justifications for his abusive behavior, the court, however, must take into account that Jaques's credibility is weak. On February 1, 1996 during a show cause hearing for Jaques's failure to attend a court-ordered mediation, Jaques stated to the court: "I've been a practicing lawyer for many years and I can say that I have an *unblemished record* in more than thirty years as a member of the bar." Show Cause Hr'g Tr. Dated Feb. 1, 1996 at 6 (emphasis added).

Cursory research reveals, however, that on any interpretation of "unblemished" Jaques's record is far from unblemished. On January 6, 1995, Judge Kent dismissed one of Jaques's cases and assessed Jaques attorney's fees for refusal to comply with discovery orders and "blatant forum shopping." *O'Neill v. AGWI Lines,* 74 F.3d 93, 95 (5th Cir.1996) (affirming sanctions under Rule 37(b)(2)). Another federal district court sanctioned Jaques under 28 U.S.C. § 1927 for vexatious behavior when Jaques improperly cancelled depositions. *Voss v. USS Great Lakes Fleet, Inc.,* 35 F.3d 567, 1994 WL 443551 (6th Cir.1994) (affirming the district court's sanctions). Jaques cancelled the depositions when he learned that the court would not permit Jaques to interfere with the deposition because of a concern that Jaques would abuse the witnesses. *Id.* The district court also sanctioned Jaques under Rule 11 for filing a motion that was not well-grounded in fact. *Id.*

In 1984, Jaques was held in civil contempt for violating an order to appear for trial and for lying to two federal judges regarding his whereabouts and reason for his failure to appear. *In re Jaques,* 761 F.2d 302, 304 (6th Cir.1985) (affirming the district court's sanctions). Not surprisingly, Jaques was disrespectful to the federal district judge and tendered a medical excuse as an explanation.

Although Jaques's credibility is weak, the court nevertheless will consider his claim of fatigue and hypoglycemic condition when determining the appropriate amount of sanctions. Jaques's purported reasons for his outbursts, however, in no way excuse or justify his abusive behavior at his deposition. There are no circumstances under which such abusive behavior would be appropriate in the course of litigation.

*Determination of Appropriate Sanction*

After finding that Jaques acted in bad faith and disrupted the litigation process, the court must determine an appropriate sanction for Jaques's abusive behavior. In *Thomas v. Capital Security Services,* the Fifth Circuit outlined the procedures and standards for imposing sanctions under Rule 11. 836 F.2d 866 (5th Cir.1988) (en banc). In *Topalian v. Ehrman,* the Fifth Circuit refined the *Thomas* principles and determined that they should "apply across-the-board to all of the district court's sanction powers." 3 F.3d 931, 936 n. 5 (5th Cir.1993). In *Thomas,* the Fifth Circuit set forth the over-arching principle that sanctions should be tailored to fit the particular wrong. *Thomas,* 836 F.2d at 877. Accordingly, "the district court should carefully choose sanctions that foster the appropriate purpose of the rule [namely, the source of sanctioning power], depending upon the parties, the violation, and the nature of the case." *Id.*

Sanctions pursuant to a court's inherent authority serve the "dual purpose of 'vindicat[ing] judicial authority without resort to the more drastic sanctions available for contempt of court and mak[ing] the prevailing party whole for expenses caused by his opponent's obstinacy.'" *Chambers*, 501 U.S. at 46, 111 S.Ct. at 2133. In this context, "vindicating judicial authority" relates back to the purpose of inherent power:

> For nearly as long as the federal courts have existed, it has been understood that certain implied powers must necessarily result to our courts of justice from the nature of their institution, powers which cannot be dispensed with in a court because they are necessary to the exercise of all others.... The inherent powers of the federal courts are governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.

*Natural Gas Pipeline*, 2 F.3d at 1406. (internal quotation marks and citations omitted). "The ultimate touchstone of inherent power is necessity." *Id.* at 1412.

Drawing on *Thomas* and subsequent refinements, the court in *Topalian* set forth four factors the district court must use in determining the appropriate sanction:

> (1) *What conduct is being punished or is sought to be deterred by the sanction?* It is axiomatic that the court must announce the sanctionable conduct giving rise to its order.

> (2) *What expenses or costs were caused by the violation of the rule?* The district court must demonstrate some connection between the amount of monetary sanctions it imposes and the sanctionable conduct by the violating party.

> (3) *Were the costs or expenses "reasonable," as opposed to self-imposed, mitigatable, or the result of delay in seeking court intervention?* "A party seeking [costs and fees for defending against frivolous claims] has a duty to mitigate those expenses, by correlating his response, in hours and funds expended, to the merit of the claims," as well as by giving notice to the court and the offending party promptly upon discovering the sanctionable conduct. The Court's findings must reflect some consideration of the reasonableness of the nonviolating party's actions in connection with the sanctionable conduct.

> (4) *Was the sanction the least severe sanction adequate to achieve the purpose of the rule under which it was imposed?* [D]istrict courts must demonstrate that sanctions are not vindictive or overly harsh reactions to objectionable conduct, and that the amount and type of sanction was necessary to carry out the purpose of the sanctioning provision.

*Topalian*, 3 F.3d at 937 (emphasis in original) (citations omitted).

■ Concerning the type of sanction to impose, one authority has stated:

> The court is vested with broad discretion to fashion an appropriate inherent power sanction to redress abusive litigation practices.

> Inherent power sanctions are essentially punitive, designed to penalize bad faith abuses of the litigation process. While they may be used to compensate the opposing party for fees that should never have been incurred, their compensatory aspect is only incidental. It is within the discretion of the court to determine the appropriate sanction.

> Among the types of inherent power sanctions that the court, in its discretion, may choose to impose are: 1. A fine. 2. An award of reasonable attorneys' fees and expenses. 3. Disqualification of counsel. 4. Preclusion of claims or defenses or evidence. 5. Dismissal of the action. 6. Entry of a default judgment. 7. Suspension of counsel from practice before the court or disbarment. 8. Vacatur of a judgment for fraud. 9. Injunctive relief limiting a person's future access to the courts. 10. A contempt citation. 11. Permitting adverse inference from document destruction.

GREGORY P. JOSEPH, SANCTIONS: THE FEDERAL LAW OF LITIGATION ABUSE 440–41 (2d ed. 1994) (citations omitted). Novel sanctions are also permissible, but they are subject to close examination because their reasonable-

ness has not been demonstrated. *Natural Gas Pipeline,* 2 F.3d at 1411.

The court has not found a reported case from the district courts in Texas or the Fifth Circuit in which a court imposed a fine rather than a shifting of attorney's fees. Other circuits, however, have approved of the practice of imposing a fine for litigation abuse. *El–Gharabli v. INS,* 796 F.2d 935, 939–40 (7th Cir.1986) (upholding $500 fine imposed on counsel for misleading the court concerning the nature of a pending case and consistently violating court rules governing the timeliness and substance of filings); *Kleiner v. First Nat'l Bank,* 751 F.2d 1193, 1209–10 (11th Cir.1985) (upholding a $50,000 fine against counsel for intentional misconduct that included lying on the witness stand); *Titus v. Mercedes Benz,* 695 F.2d 746, 749 n. 6 (3rd Cir.1982); *Santiago v. Rivera,* 553 F.2d 710, 712 n. 1 (1st Cir.1977).

■ In determining and imposing a sanction, the court need not make specific factual findings in every instance. *Topalian,* 3 F.3d at 936. In *Thomas,* however, the court stated:

Like a sliding scale, the degree and extent to which a specific explanation must be contained in the record will vary accordingly with the particular circumstances of the case, including the severity of the violation, the significance of the sanctions, and the effect of the award. If the sanctions imposed are substantial in amount, type, or effect, appellate review of such awards will be inherently more rigorous; such sanctions must be quantifiable with some precision.

*Thomas,* 836 F.2d at 883.

■ Congruent with the principle that a court's inherent power originates from the necessity of effectively disposing of cases, vindicating judicial authority requires a court to fashion a sanction that deters future misconduct, specifically and generally. A sanction imposed for retribution is not appropriate to vindicate judicial authority because the retribution, standing alone, does nothing to restore " 'the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.' " *Natural Gas Pipeline,* 2

F.3d at 1406 (quoting *Link v. Wabash R. Co.,* 370 U.S. 626, 630, 82 S.Ct. 1386, 1389, 8 L.Ed.2d 734 (1962)). Accordingly, the court will sanction Jaques only to the extent that it is necessary to deter Jaques and others from such abusive behavior.

The court finds that the appropriate sanction in this case to deter such behavior by Jaques is a fine payable to the United States Treasury. Under the *Thomas/Topalian* factors, the court finds that a fine of $7,000 is appropriate to deter Jaques from engaging in abusive behavior. Under the first *Thomas/Topalian* factor, Jaques is being sanctioned for his abusive behavior at his deposition. Under the second and third *Thomas/Topalian* factors, the court has been forced to expend a significant amount of judicial resources because of Jaques's abusive behavior. The court had to hold a hearing on Plaintiff's motion to compel and a subsequent show cause hearing. This time would have been better spent handling other cases on the court's docket. Finally, the judiciary cannot efficiently dispose of cases when litigants flout the litigation process with verbal abuse and veiled threats of violence.

Under the fourth *Thomas/Topalian* factor, the court concludes that $7,000 is the least severe sanction adequate to deter Jaques and others from similar disruption to this court's orderly and expeditious disposition of cases. During his deposition, Jaques testified that, over the course of his career, he has had a number of settlements and jury verdicts in the millions of dollars. Jaques Depo. at 33–35. Additionally, at the second show cause hearing, Jaques said that he traveled to the hearing on his private aircraft. Accordingly, the court finds that Jaques is a man of considerable wealth, and therefore a substantial sanction is necessary in these circumstances to adequately deter Jaques from future abusive behavior. Despite Jaques's wealth, however, the court considers some downward factors on the amount of a sanction, namely: (1) Jaques's fatigue at the deposition, (2) his hypoglycemic condition, and (3) the level of disruption to litigation was to the discovery process rather than the entire litigation. The $7,000 sanction is large

enough to deter Jaques from engaging in any future abusive conduct, yet the amount is lower than what it may have been if there were no mitigating circumstances.

While the court's fine addresses Jaques's abusive behavior at the deposition as a whole, the court arrived at the $7,000 figure by focusing on Jaques's most egregious language. The $7,000 amount was calculated by assessing fines of: $500 for each of the four times Jaques referred to Plaintiff's counsel as either an "idiot" or an "ass"; $1,000 for Jaques's suggestion during the deposition that Plaintiff's counsel "ought to be punched in the goddamn nose"; $1,000 for each of the three times Jaques called Plaintiff's counsel a "slimy son-of-a-bitch"; and $1,000 for Jaques's parting words to Plaintiff's counsel, which were "Fuck you, you son-of-a-bitch."

## CONCLUSION

Therefore the court hereby ORDERS Leonard C. Jaques to pay a fine of $7,000 by delivering a certified check made payable to "Clerk, United States District Court" not later than May 24, 1996.